LA PENOTIERE, Appellant, v. KELLAR et al., Respondents.

(137 N. W. 382.)

1. **Bill of Exceptions—Motion to Strike—Rules of Court—Briefs.**

   A motion to strike out a bill of exceptions can only be brought before the Supreme Court in accordance with the rules of court governing motions and orders to show cause; such motion cannot be inserted in respondent's brief. That part of respondent's brief relating to such motion is immaterial and will be disregarded.

2. **Evidence—Attestation of Judgment—Admissibility.**

   Laws 1901, Chap. 166, requiring attestation of judgments by clerks as a condition to their entry, does not apply to an unattested judgment duly filed and docketed prior to enactment of such statute; and such judgment was admissible in evidence.

3. **Evidence—Sufficiency of Evidence—Finding.**

   Where evidence is very conflicting, and there is not a clear preponderance against a finding, it will not be disturbed.

4. **Judgment—Assignee of Judgment—Payment to Attorney of Judgment Creditor—Payment to Third Party—Agency.**

   Under the statute authorizing an attorney of record procuring a judgment to collect and satisfy it of record, a payment to such attorney is a payment on the judgment and a satisfaction pro tanto, regardless of what the attorney does with the money; but he cannot bind his client, the real owner of the judgment, by directing payment to a third party, not for his client, but for such third party as owner of the judgment. A judgment debtor or one standing in his place, being advised of an assignment of the judgment, acts at his peril in paying the judgment to any party as such assignee, without ascertaining from the records or other competent evidence that such party is assignee; he cannot rely on statement of attorney of original judgment creditor.

5. **Judgment—Execution Sale—Satisfaction Pro Tanto of Judgment—Notice of Part Payment.**

   Where the amount paid on a judgment is insufficient to satisfy it in full, but is made to a third party as owner, to the knowledge of the alleged present owner of the judgment and of the sheriff, and after sale proceedings under execution on the judgment are pending, a sale thereafter, pursuant to

such initiated sale proceedings, to realize the balance due on the judgment, is valid.

6. **Execution Sale—Satisfaction Pro Tanto of Judgment—Deficiency Manner of Offering Land Under Execution Sale—Voidable Sale.**

A sale under execution to satisfy a judgment after partial payment was made to a third party as alleged owner, to the knowledge of the assignee of the judgment and of sheriff after sale proceedings are pending, is at most but voidable, where the sale is made to satisfy too great a deficiency, or where, owing to the small amount remaining unpaid, but part of the land sold under execution should have been offered for sale.

(Opinion filed   June 25, 1912.)

Appeal from Circuit Court, Fall River County.   Hon. LEVI McGEE, Judge.

Action by Emma M. La Penotiere against Chambers Kellar and another, to quiet title to land.   From a judgment quieting title in defendant Kellar, plaintiff appeals.   Affirmed.

*Elmer E. Juckett*, for Appellant.

A judgment does not become complete or effective until rendered by the court, attested by the clerk and filed in his office. 127 N. W. 647.

The judgment creditors purchasing real estate at execution sale under the judgment takes subject to the unrecorded deed delivered by the judgment debtor prior to the rendition of the Judgment.   McCalla v. Investment Company, 14 L. R. A. (N. S.) 1258.

The execution creditor purchasing at his own sale is not a bona fide purchaser within the meaning of the recording acts. 31 Pacific, 135.

If a judgment is assigned by the owner, and afterwards levied upon, and sold as his property, the right of the assignee is prior to that of the purchaser at sheriff's sale.   Black on Judgments, Vol. 2, par. 957; Ford v. Manlove, 18 Cal., p. 436, good; Mitchell v. Hackett, 25 Cal. p. 538; Southard v. McBrown, 63 Cal., p. 545; Shaffer v. McCracken, 58 m. 9 W., good.

No particular form of Assn. necessary—merely intent to sell on part of one, and buy on part of other, divests the assignor of

all his ownership and passes it to assignee. Am. & Eng. Enc. of L., Sec. Ed., Vol. 17, 877; Dunn v. Snell, 15 Mass. 481; Emory v. Jones, 70 Mo. 537.

While it is desirable that assignment of judgment be recorded it is not usually necessary to complete the assignment. Steele v. Thompson, 62 Ala. 323; Winberry v. Koone, 83 N. C. 351; Am. & Eng. Enc. Law, Vol. 17, 878.

Fact that subsequent assignee has no notice of prior assignment will not help his title, as he can have no better equity than the first assignee, who is prior in point of time. 2nd Am. & Eng. Enc. of Law, Vol. 14, 883; Mitchell v. Hackett, 25 Cal. 538, 85 Am. Dec. 151.

Rule Caveat Emptor applies as well to assignment of a judgment as to that of any personal property. The assignee stands in no better position than assignor; and if he has no title he can convey none to assignee. Rider v. Kelso, 53 Iowa, 367; Weber v. Schelter, 1 S. D. 205.

The assignee of a judgment takes no title to the judgment previously assigned, whether he had notice of the assignment or not. 23rd Cyc. 1419; Cramer v. Little, 79 Cal. 332; 21st Pac., 750; Commercial Bank v. Rufe, 92 Fed. Rep. 789.

It is not necessary for the assignee to file the assignment, nor give notice of it to other persons; and a bona fide purchaser acquires no title as against the original assignee. Curtin v. Kowalski, 145 Cal. 431, 78 Pac. 962.

Notice to debtor of assignment of judgment is necessary only for the purpose of protecting the assignee against the subsequent action of the parties to the assignment. Brown v. Ayres, 33 Cal. 925, 91 Am. Decis., 655; Stoddard v. Benton, 6 Colo. 548.

It is a well settled rule that the assignee of a judgment stands in no better position than the assignor as regards equities existing between original parties to the judgment; and takes it as subject to all equities and defenses subsisting at the time of the assigning of the judgment, which judgment debtor could have asserted against it at the hands of judgment creditor—notwithstanding the assignee may have had no notice thereof. Ind. School Dist. v. Schreiner, 46 Iowa, 172; Moore v. Smith, 103 Mich. 387; Yorton v. Milwaukee & C. R. R. Co., 62 Wis. 367.

Judgment debtor not bound by assignment till he has notice of it and payment to J———— creditor in good faith before notice is valid as against assignee. 2nd 17, A. & Eng. of Law, 879.

The judgment is only a lien upon the interest of the judgment debtor and such lien is subject to all existing equities. Fitzgerald v. Miller, (S. D.) 63 N. W. 221; Moore v. Thomas, 36 N. W. 712.

We contend that the preponderance of the evidence shows that the Ham judgment was assigned to William Gardner prior to the levy upon said judgment by Kellar, and therefore Fargo owned nothing in the judgment at the time of the sale and Kellar bought nothing, in fact that he only paid $20.00 dollars for the judgment shows in itself that it was not a bona fide sale.

Kellar should have notified the plaintiff at once as soon as he claimed to be the owner of the judgment, that he was the owner, and did not do so and she paid the judgment in good faith he is bound thereby.

The courts are not clear as to how much evidence is necessary to prove an assignment.

The testimony of two plaintiffs somewhat corroborated by the testimony of other witnesses that the judgment had been assigned to one of the plaintiffs, establishes such assignment as against the testimony of defendant alone. Mosher v. McDonald, 102 N. W. 837.

The plaintiff paid the money for the redemption of the judgment in good faith without notice that Kellar owned the same, if he did own it, and upon the advice of Wilson & Wilson, the attorneys of record, that she should pay it to Judge Gardner.

Payment made to the attorney of record, who procured the judgment before his authority is revoked, or before due notice of such revocation is given to the judgment debtor, is binding on the judgment plaintiff. 2 Black on Judgment, Sec. 986; Shaffer v. McCracken, 58 N. W. 911.

The burden of proof rests upon the party to show that the attorneys appearance for him was unauthorized. 2nd Eng. 3rd A. & Eng. Enc. of L. 349; 2 Enc. of Ev. 139.

It is always presumed that an attorney appearing and acting for a party to a cause, has authority to do so and to do all other acts necessary, and the burden of proof rests on the party denying such authority to sustain his denial, by a clear preponderance of the evidence. 2nd Edd. 3rd A. & Eng. Enc. of L., 375; 2 Enc. of Ev., 150; Dalbkermyer v. Schalter, 3 S. D. 186.

Where a judgment debtor pays the amount of the judgment to the plaintiff's attorney of record he is discharged from further liabilities thereon although the client may have assigned the judgment to the third party of which assignment the debtor was ignorant. McCarver v. Nealey; 1st Green, (Iowa) 360; 3rd A. & Eng. Enc. of L., 2nd. Edd., 365.

An attorney being an agent duly authorized, his acts are those of his client, the client is therefore bound by all the acts of his fraud or collusion, and he cannot plead negligence of his attorneys as a ground of relief. 3rd A. & Eng. Enc. of L., 2 Ed., 324; Bacon v. Mitchell, 14 N. D. 455.

We contend that the preponderance of the evidence clearly shows that the judgment was assigned to Gardner before Kellar levied upon it, that Gardner was the owner and duly satisfied the judgment. That even if Kellar was the owner of the judgment he was bound by his attorneys, Wilson & Wilson, when they directed it being paid to Judge Gardner and we contend that the court erred in rendering judgment in favor of the defendant and against the plaintiff and for the same reason in overruling plaintiff's motion for a new trial.

*Eastman & Dudley,* and *Norman T. Mason,* for Respondent.

It does not appear from the abstract or from the record, nor is it claimed, that the judgment was not rendered by the judge or filed in the office of the clerk. The contrary is expressly found by the court: "Judgment roll in the case was duly filed and the judgment docketed," etc. (Abstract, p. 25, fol. 75). It also appears and is found by the court that the judgment was rendered in 1893. (Abstract, p. 25, fol. 75; p. 39, fol. 117. But the law requiring attestation by the clerk was not passed until nearly eight years thereafter. (S. D. Session Laws 1901, Chap. 166, p 267).

It is only when the appellate court is satisfied that there is a clear preponderance of evidence against the decision of the lower court that that court will be reversed. Durand v. Preston, 128 N. W. 129; Ricker v. Scott, 13 S. D. 208; Harvester Co. v. McKeever, 21 S. D., page 93; Sands v. Cruickshank, 15 S. D. 142; Jackson v. Prior Hill M. Co., 19 S. D. 453.

The more recent utterances of this court are even to the effect that the findings will not be reversed where there is a conflict in the evidence. Shearer v. Hutteriche Bruder Gemeinde, (S. D.) 134 N. W. 63; Fritschel v. Grosshouser, 123 N. W. 689, 24 S. D. 129; Dodson v. Crocker, 20 S. D. 312.

The alleged assignment of this judgment to William Gardner was not offered in evidence; the only evidence to establish it was secondary in character, contained in Gardner's deposition taken some fifteen years after the alleged date of the assignment.

Gardner received the money in payment of this judgment about March 16, 1895. He knew both as a man and a lawyer that—if he was entitled to receive the money the plaintiff LaPenotiere was entitled to an immediate satisfaction of the judgment. And what does he do? He transfers back to the Fargo Mercantile Company through its secretary, Thomas H. Wells, this identical judgment, which it is now insisted he had already been paid in full for! This transaction can only be explained upon the theory that Gardner then realized that he himself could not give a valid satisfaction and he thereupon washed his hands of the whole affair.

The date of the alleged assignment to Gardner is of the utmost importance; he testifies, "I cannot at this time recollect the precise date of the assignment to me, but I believe it to have been about October 1, 1894." (Abstract, p. 14, fol. 40).

Is not the evidence conclusive that after the lapse of fifteen years, Mr. Gardner's memory was completely at fault as to the date of the alleged assignment to him? And that such assignment was actually made, if at all, long after respondent Kellar's right accrued? But the inconsistencies multiply.

And, moreover, if Gardner had actually been the bona fide owner of the Ham judgment prior to its purchase and assignment

to Kellar, there would have been no necessity for the unseeming haste and scramble to get the money paid to Gardner (Abst. fol. 47 to 49).

"The assignor must not retain any control over the fund, any authority to collect or any power of revocation. If he do it is fatal to the claim of the assignee." Rufe v. Bank, 99 Fed. 650 at 653.

A further indication that Gardner was not the owner of the Ham judgment at the time of the sale to Kellar, and did not then claim to be, is found in a letter from Messrs. Wilson & Wilson to appellant La Penotiere, dated April 8, 1895 (Respondent's Brief p. 17,) from which it appears that C. G. Fargo paid the bill for the publication of the notice of sale; why did he pay this if Gardner was the owner of the judgment? And why were neither Fargo nor Wilson & Wilson called as witnesses in support of Gardner's evidence? If Gardner had no assignment of the judgment in fact prior to the purchase by Kellar, he would of course be liable to refund the money received from the plaintiff. His testimony is therefore that of a vitally interested party and it is not incumbent upon the trial court to accept as absolute verity his statements concerning the transactions, and particularly is this true where those statements contained numerous internal evidences of inaccuracies. Union Nat. Bank v. Mailloux, 132 N. W. 168 173 (S. D.) McGill v. Young, 92 N. W., 1066-16 S. D. 360. Blount v. Medberry 16 S. D. 562, at 568.

As a matter of fact, however, Gardner's testimony is squarely contradicted by the respondent Kellar, who testifies that shortly after he bought the land in controversy upon execution sale, in Fargo & Son v. Ham, (March 15, 1895) he had a conversation with Gardner in which Gardner reproved him for not taking over this Fargo judgment for him. (Abs. p. 21, Fol. 62.)

There was no evidence that Wilson & Wilson ever were or acted as respondent's attorneys, excepting what might be inferred from the fact that their names appear on the notice of sheriff's sale on execution, in Fargo & Son v. Ham. This was either their own unsworn declaration or that of the sheriff, and of course is no evidence at all as against respondent. Moreover, the notice itself is

entitled, "Sylvester C. Fargo and Charles G. Fargo, co-partners as S. C. Fargo & Son, plaintiffs" etc., and appears to have been signed by the sheriff, followed by the words, "Wilson & Wilson, plaintiff's attorneys." This notice therefore, does not amount to an assertion either by the sheriff or by Wilson & Wilson that they were attorneys for any one but the plaintiff's, Fargo & Son. It is certainly not a declaration that they were attorneys for respondent Kellar. Furthermore, the notice of sale is dated January 30, 1895, and Mr. Kellar did not become the owner of the Fargo v. Ham judgment until February 23, 1895, (Abstract, p. 42, fol. 124,) nearly a month after the notice purports to have been signed. Finally, it is not even claimed, much less shown by the record, that Messrs. Wilson & Wilson in advising payment by appellant of this judgment to Mr. Gardner either acted as or claimed to act as respondent's attorneys; consequently, it is impossible to conclude that respondent was bound by their acts; first, because they were not and do not appear to have been his attorneys; and second because they do not purport to have acted as such.

It does not appear that the relation of attorney and client existed between appellant and Mr. Cull.

It was not only essential for appellant to show that she paid this judgment of Fargo & Son v. Ham to the true owner thereof, but also that she paid it before the sale; otherwise she cannot defeat the rights of respondent as execution purchaser thereat. The sale to Kellar was on March 16, 1895. (Abstract, p. 141, fol. 123.)

The burden was upon appellant to show facts defeating the sheriff's sale, which will be presumed to have been regular, and which was regular, upon its face. Does this testimony sustain such burden by a clear preponderance of evidence? Had the payment actually been made before the sale, the first thing that would have naturally and rightfully been done would have been to stop the sale. Nothing of this sort was even attempted, but the sale was allowed to proceed as if no payment had been made, and Mr. Kellar became the purchaser thereat "in the best of faith and with no notice or knowledge of Gardner's claim." (Abstract, p. 42, fol. 65 p. 23, fol. 68.)

Not only must the judgment have been paid to the rightful owner thereof, and before the sale, but it must have been paid in full; otherwise a sale had thereon, with or without notice of a partial payment, would be a valid sale. Freeman, Void Judicial Sales (4th Ed.) Sec. 34.

Where the statute provides an express method of assignment the legal title cannot be transferred except by compliance therewith. 17 Enc. Law, 2 Ed., p. 876. The same authority states the rule to be that where such statute does not expressly exclude other modes, it is regarded as cumulative merely and will not render invalid an assignment that is sufficient at common law to pass the equitable title. 17 Enc. of Law, 2 Ed., p. 877.

The undisputed evidence and record show that Kellar was not the judgment creditor and that he paid cash for the judgment. But even were it otherwise the great weight of authority and the better reason sustains the position that even the judgment creditor, purchasing at execution sale upon his own judgment, is entitled to be protected as an innocent purchaser where without notice he bids in property at execution sale and applies a portion or all of his judgment upon the judgment in which such execution sale is made. Shutz v. Fidvick 128 N. W. 811 (S. D.) Pugh et al. v. David E. Highley et al. (Ind.) 44 L. R. A. 392. Riley v. Martinelli, 97 Cal. 575, 21 L. R. A. 43; Hunter v. Watson 12 Cal. 377, 73 Am. Dec. 543; Glover v. Doheney, 33 Ia. 36; Wood v. Chapin 13 N. Y. 509 67 Am. Dec. 62; Ettenheimer v. Northgravesm, 75 Iowa, 28; Smith v. Farmers' & Merchants' National Bank, 110 P. 410 (Ore.) Vitto v. Hamilton 86 Ind. 137; Evans v. McGlasson, 18 Ia. 150; Butterfield v. Walsh, 36 Ia. 534; Mansfield v. Johnson, 51 Fla. 239, 40 South, 196, 123, A. S. R. 159; Gilchrist v. Gough, 63 Ind. 576, 30 Am. Rep. 250.

The policy of this court in adopting a liberal interpretation for the recording statutes of this state with reference to the real property should be extended to the construction of the statute with reference to the recording of assignments of judgments. (See Shutz v. Tidrick, 128 N. W., 811 (S. D.)

WHITING, J. This action was brought for the purpose of quieting title to certain lands situate in Fall River county. Trial

was had before the circuit court without a jury, and findings of
fact and conclusions of law were entered in favor of defendant.
Upon such findings and conclusions a judgment was rendered, and
a motion for a new trial having been denied, plaintiff has appealed
to this court from such judgment and order denying a new trial.

[1] The respondent, in his brief, moved that the bill of exceptions be stricken from the record, and, in support of such motion, incorporated in his brief copies of certain affidavits that he
claims were presented to the trial court in opposition to the settlement of such bill of exceptions. Appellant asks this court to
strike out of respondent's brief the parts thereof pertaining to
such motion. Inasmuch as a motion to strike out a bill of exceptions can only be brought on before this court in accordance
with the rules of this court governing motions and orders to
show cause, that part of respondent's brief relating to such motion
is immaterial for any purpose and must be disregarded by this
court even if there was no motion to strike same from brief.

One H. was the owner of the land in question, and a judgment was procured against him by one F. & Son, which judgment
was entered and became a lien on said land on June 21, 1893. On
February 23, 1894, a judgment was rendered against F. & Son.
Upon this latter judgment an execution was issued and levied upon
the first-mentioned judgment; said levy being on February 2,
1895. Sale was had upon such execution on February 23, 1895,
and the defendant Kellar became the purchaser of such judgment
against H., receiving an assignment of such judgment executed
by the sheriff of Fall River county. Such assignment was thereupon filed in the office of the clerk of the circuit court of Fall
River county. On or about January 23, 1895, the sheriff of Fall
River county, under an execution issued upon the judgment of
F. & Son against H., levied upon the land in question and upon
January 30, 1895, gave notice of a sheriff's sale of said land under
such execution; such sale to take place on March 16, 1895. Said
notice was signed by the sheriff of said Fall River county and also
by the attorneys who were the attorneys of record for the judgment creditor in the procuring of such judgment. On March 16,
1895, sale was had as noticed, and at such sale the defendant be-

came the purchaser of the land in question and received sheriff's certificate. Afterwards and prior to the commencement of this action he received and placed of record a sheriff's deed issued upon said sheriff's certificate. It is therefore clear that defendant became vested with the title to this land unless the plaintiff, under and by virtue of the following facts, has a superior claim thereto.

Plaintiff received a conveyance of the land in question from H., which conveyance was made subsequent to the entry of judgment against H. Evidence was received tending to prove the following facts: After the obtaining of such title, she learned of such judgment, and, learning that the land was noticed for execution sale, she took steps to ascertain what was necessary in order to redeem from such judgment and was advised by the attorneys whose names were attached to said notice of sale that it would be necessary for her to at once pay the said judgment in order to prevent the sale. She was advised by such attorneys that one Wm. Gardner was the real owner of said judgment and that she should pay the same to Gardner direct. She, accordingly, therewith wired the amount of such judgment to the said Wm. Gardner, and was afterwards advised by said attorneys that she had not remitted sufficient to cover the costs which had been incurred. On March 22, 1895, she forwarded to an attorney money to pay the balance.

Gardner testified that some time in October, 1894, he became the purchaser of, and received an assignment of, the F. & Son judgment against H., but that he failed to file the assignment in the office of the clerk of court: that he was the true owner of the judgment at the time of the issue of the execution thereon; and that, as such owner, he received the money which was wired to him by the plaintiff. The trial court found that Gardner never was the owner of the judgment.

[2] Appellant contends that the trial court erred in admitting in evidence the judgment roll in the case F. & Son v. H., for the reason that the judgment did not bear the attestation of the clerk of court. This judgment did not appear as a part of the record in this court; but, in the findings of the trial court, it does appear that the judgment was duly filed and docketed, and that the same

was rendered in 1893, which was long prior to the passage of chapter 166, Session Laws 1901, requiring the attestation of the judgment by the clerk.

[3] Appellant contends that the trial court was in error in finding that Gardner did not become the assignee and owner of the judgment against H. The evidence upon this question of fact was very conflicting, and, after a careful review of the same, we are unable to say that there is a clear preponderance of evidence against the finding of the trial court. Appellant contends that the court erred in the admission of certain letters and of proof of a conversation had between Gardner and Kellar; but we think there is no merit in this contention.

[4] The only serious question arising under the record herein, other than that of the ownership of the judgment against H., comes from the fact that Kellar purchased such judgment after execution had been issued thereon and before sale and allowed the sale to take place without any change in the notice as published, thus constituting the attorneys for the judgment creditor his ostensible attorneys in all matters rightfully pertaining to such sale. It is the contention of appellant that such attorneys had the power to and did bind Kellar, if Kellar was the owner of such judgment, when they directed the plaintiff to pay such judgment to Gardner. Kellar, by allowing such notice to continue after his purchase of the judgment and by allowing sale thereunder, constituted the judgment creditor's attorneys, his attorneys, with the power to bind him to the extent that they could have bound F. & Son. Gill v. Truelsen, 39 Minn. 373, 40 N. W. 254.

Under the statute of this state the attorney of record in the procuring of a judgment is given power, either with or without execution sale, to collect the judgment and, upon such collection, to satisfy the judgment of record. It is therefore clear that any payment that may be made to such an attorney is a payment upon the judgment and a satisfaction pro tanto regardless of what the attorney may do with the money received, and this because, in the receipt of such money, he would be acting within his power as such attorney. But it is one thing to say that the attorney of the owner of a judgment (be such owner the original judgment

creditor or an assignee of same) has the power to receive money upon such judgment, or even the power to say where or to whom the money shall be deposited or paid for his client, and quite a different thing to say .that such an attorney can bind his client (the owner of the judgment) by directing the payment of money to some third party not for his client, but to such third person *as the owner of such judgment.* Plaintiff, on being advised that Gardner was the owner of the judgment and directed to pay the money to him, could not but know that these attorneys, as agents of F. & Son or of any assignee of F. & Son other than Gardner, were without power to authorize payment to Gardner as the owner. Where the judgment debtor. or one standing in his place is advised of the fact that the judgment has been assigned, he acts at his peril in the payment of such judgment to any party as such assignee, without ascertaining from the records of the proper office or from other competent evidence that such party. is the assignee. He cannot rely upon the statement of the agent or attorney of the original judgment creditor. It is clear that the attorneys could not have bound F. & Son, and neither could they bind Kellar by any attempted authorization of the payment of money to a third person as the owner of the judgment.

[5] But even if, under the facts proven herein, the plaintiff had been authorized to make the payment to Gardner, and such payment had been a satisfaction pro tanto of the judgment, yet it appears that, owing to the costs that had accrued, the amount paid Gardner was insufficient to satisfy said judgment in full. It was therefore lawful, even charging Kellar and the sheriff with notice of the payment made Gardner, for them to proceed with the sale in order to realize balance due on judgment.

[6] If the sale was then made to satisfy too great a deficiency, or if, owing to the small amount remaining unpaid, but a part of said land should have been offered for sale, the sale is not thereby rendered void but at best but voidable. Section 34, Freeman on Void Judicial Sales (3d Ed.) ; Osgood v. Blackmore, 59 Ill. 261. It cannot be contended that there has been any redemption from this execution sale, even if the sale were for too great an amount, as there is nothing to show that the amount of money sent by

plaintiff on March 22, 1895, was sufficient to redeem from such sale, or, if sufficient, that it was ever paid over to defendant or any one representing him.

The judgment of the trial court and order denying a new trial are affirmed.