# URI OSGOOD

## *v.*

# JAMES W. BLACKMORE.

| 59 | 261 |
| 22a | 492 |
| 59 | 261 |
| 130 | 224 |
| 59 | 261 |
| 148 | 555 |
| 59 | 261 |
| 153 | 202 |
| 153 | 423 |
| 59 | 261 |
| 175 | 373 |
| 59 | 261 |
| 180 | 387 |
| 180 | 464 |
| 59 | 261 |
| 186 | 8438 |
| 59 | 261 |
| 187 | 8279 |
| 59 | 261 |
| 189 | 3121 |
| 59 | 261 |
| 205 | 3172 |
| 106a | 7254 |

1. JUDGMENT—*jurisdiction.* Where a court of general jurisdiction receives the confession of a judgment, the presumption will be indulged that the court heard evidence that the claim was due, and proof of the execution of the power to confess the judgment. Such evidence need not be preserved in the record.

2. POWER OF ATTORNEY—*description of the note.* When a power of attorney is written on the same paper and below the note, and refers to the "foregoing note," and describes it correctly except as to the time when it was to begin to draw interest, the description is sufficient to identify the note, and the presumption is, the judgment was confessed on the note as authorized by the power of attorney. Such a case is not the same as where the judgment is confessed on a note entirely different in date from that described in the power of attorney. The case of *Chase* v. *Dana,* 44 Ill. 262, considered and distinguished.

3. JURISDICTION—*presumption of.* The presumption is in favor of the jurisdiction of a court of general jurisdiction, without the facts appearing in the record; on the other hand, there is no presumption in favor of the judgment of a court of inferior and limited jurisdiction; but the facts must appear in the record, showing the jurisdiction. Nor can the judgment of a court of general jurisdiction be attacked in a collateral proceeding by extrinsic evidence. If it appear from the record in the case that the court did not or could not have had jurisdiction of· either the subject matter or the person of the defendant, then the presumption in favor of the judgment would be overcome.

4. SHERIFF'S SALE—*land—its division.* When the sheriff sells lands *en masse,* which could have been divided without injury to the parties, it is an irregularity that would enable the defendant to avoid the sale, on motion or otherwise, before the time for redemption expires, but it does not render the sale void.

5. SHERIFF'S SALE OF LAND—*notice.* Where a sheriff sells lands under execution on a defective or insufficient notice, the sale is not void, or even voidable, unless the purchaser has notice of the irregularity. And *bona fide* subsequent purchasers, without notice, can not be affected by such non-compliance with the statute.

6. SAME—*postponement of sale.* Where the sheriff published the notice of the sale, as required by the statute, and subsequently inserts under it: "The above sale is postponed until the 30th day of November, 1861,"

which was not signed by the sheriff, but was, with the notice, published in three weekly issues of the newspaper: *Held,* that the notice of postponement of the sale thus made was sufficient, and the fact that it was only thus published sixteen days, did not render the sale void, but voidable, by the defendant, if urged in apt time.

7. SHERIFF'S RETURN. The return of the sheriff that he had made the sale, even if it showed a defective notice of the sale, could not affect the rights of the purchaser. The statute has not made such return evidence of any fact, nor is it a link in the chain of title, and neither immediate nor remote purchasers can be affected by it.

8. PRACTICE—*of specific objections.* Where a sheriff's deed was read in evidence, and only a general objection was interposed at the time, the objection can not be urged for the first time on error that the deed was not acknowledged before a proper officer. Had that objection been made on the trial, it could have been obviated by proving the signature of the sheriff.

APPEAL from the Circuit Court of Woodford county; the Hon. S. L. RICHMOND, Judge, presiding.

Mr. GEORGE S. HOUSE, for the appellant.

Messrs. WILLIAMS & THOMPSON, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of ejectment, brought by appellant, in the Woodford circuit court, against appellee, to recover eighty acres of land. The cause was tried by the court, without a jury, by consent of parties, when the issues were found for the defendant, and a judgment for costs was rendered in his favor, and the record is brought to this court, and errors are assigned.

On the trial, appellant introduced in evidence a patent from the United States, for the land in controversy, dated the 15th day of October, 1855, conveying the land to him. The defendant then read in evidence a judgment rendered by the Superior Court of Chicago, in favor of Martin C. Bissell, against appellant and sixteen other persons, dated the 7th day of August, 1861, for the sum of $4577. An execution was issued by the clerk on the same day, under the judgment,

directed to the sheriff of Woodford county, which came to his hands on the 9th of the same month, and was, on that day, levied on the premises in controversy, together with other lands. Notice was given that the sale would be made on the 25th day of November, 1861, but it was postponed until the 30th, when this, with the other land, was sold, and the judgment and costs were paid, and the execution returned satisfied. At this sale, Giles Heath became the purchaser, who, on the 4th day of October, 1862, assigned the certificate of purchase to Martin C. Bissell, to whom the sheriff, after the time for a redemption had expired, made a deed for the premises in controversy.

Appellee then read a deed for the premises from Bissell to Harper and Barfoot, dated November 14th, 1867, and a deed from them conveying the premises to himself, dated January 15th, 1868. Several other deeds for other portions of the quarter of which this was a part were read in evidence, but as they in nowise relate to these premises, they are not referred to here. Appellee then read in evidence a deed from appellant, for these premises, to Milton Philbo, dated the 3d of September, 1861.

To the introduction of all this evidence, appellant objected.

When appellee had closed his evidence, appellant read in evidence a deed from Philbo reconveying the premises to him, on the 5th of January, 1869. He also produced and read in evidence a complete transcript of the recorded proceedings in the Superior Court, in the case of *Bissell* v. *Osgood,* and others, under which the land was sold by the sheriff. Appellee objected to the reading of this transcript, because it was irrelevant, and because the warrant of attorney, and affidavit proving its execution, were no part of the record in confessing the judgment. He also read in evidence the notice of the sale, fixed for the 25th of November, 1861, and the sheriff testified it was duly published. But immediately under it is this writing: "The above sale is postponed to the 30th day of November, 1861." It, however, was not signed by the sheriff,

nor did it bear any date. The sheriff, however, testified that the postponement was made, and this notice of it was published before the 25th of November, the first day fixed for the sale.

Appellee introduced evidence that he purchased the land in good faith, and without any notice that it was claimed there was any irregularity in the confession of judgment, the notice, or sale; that he was to pay $2200, and had paid about $1000 of that sum.

The questions raised on this record are: Was the judgment valid and binding, or was it void for the want of jurisdiction in the court rendering it? And, were there such irregularities in conducting the sale as to render the sale void?

The judgment was rendered while the court was in session, and was not entered by the clerk in vacation. The judgment order recites the fact that Bissell appeared by counsel and filed his declaration, and that the defendants appeared by their attorney; that his warrant of attorney was proved, and that he confessed that defendants were indebted in the sum for which the judgment was rendered, and consented that a judgment might be rendered against them; whereupon a regular formal judgment was rendered.

It is believed to be a rule, without exception, that when a plaintiff in ejectment seeks to recover land against the defendant in execution, or when it becomes necessary to rely on a sheriff's deed, as a link in his chain of title, he is only required to produce a judgment, an execution thereon, and the sheriff's deed for the premises. This rule is so familiar that it requires no citation of authorities in its support.

Having produced these, he has shown a *prima facie* transfer of the title from the defendant in execution to the person to whom the sheriff has conveyed. If, then, the other party can show that the court rendering the judgment had no jurisdiction of either the subject matter or of the person, of the parties, the *prima facie* case is overcome. But the court, to acquire jurisdiction of the parties, has only to have them

before it, and whether by legal notice, by service, or voluntary appearance, does not matter. And where the record shows, or the court finds, this jurisdictional fact, the record can not be contradicted or questioned in a collateral proceeding.

It is true, that if, by an inspection of the whole record, it is seen that there could not have been jurisdiction of the person, then the *prima facie* case would be overcome. But where the court has adjudged that there was jurisdiction of the person, we can not look beyond the record, or receive evidence outside of it, to disprove the finding. In this respect the question can alone be tried by the record.

The court having a general jurisdiction, and having received the confession, we will presume that proof of the notice was properly made, as required by the note, and that the power of attorney was duly executed. This was a matter *in pais*, and it is not required that this proof should be preserved in the record. But if such evidence should be preserved, then the affidavits of Heath prove these facts, and it could be no more than error to make such proof instead of calling a witness.

But it is insisted that the note described in the warrant of attorney was entirely different from the note upon which suit was brought; that there was no power conferred to confess this judgment, and that the case of *Chase* v. *Dana*, 44 Ill. 262, is in point, and must control this. In that case, the warrant of attorney described a note of one date, and the attorney in fact confessed a judgment on a note of a wholly different date, and there was nothing in the record from which it could be seen that the note was one and the same, and that a mistake was made in describing it in the warrant of attorney. In this case the note was payable in thirty days after written notice, with ten per cent interest per annum, while the warrant of attorney in other respects describes the same note, but says it was payable with ten per cent interest after it became due and payable.

The power of attorney commences: " Know all men by these presents, that we, * * * * are jointly and severally

indebted to Martin C. Bissell, of Joliet, Ill., upon the foregoing promissory note bearing even date herewith, in the sum of $5000, with interest thereon at the rate of ten per cent per annum after the same becomes due and payable, it being for money actually borrowed, and due thirty days after written notice. "

The statement that they were indebted on the foregoing note, can be understood to imply nothing else than the note which was on the same paper upon which the warrant of attorney was written or printed. It will bear no other reasonable construction. And if both the instruments were on the same paper, and the note preceded the warrant of attorney on the paper, there can not be the slightest doubt that it was referred to, although misdescribed as to the time when it began to draw interest. It was, in all other respects, correctly described, and does not leave a doubt that the note referred to was that which preceded it on the same paper.

The clerk, in making out the transcript, copies first, the note found in this transcript, and immediately after, the warrant of attorney. He does not precede either with a statement from which it can be inferred they were separately filed, and we infer that the originals on file in his office were on the same paper, and the note preceded the warrant of attorney. And being fully satisfied that the note in this record is that referred to in the warrant of attorney, and that it was accidentally misdescribed only as to the time when it began to bear interest, we can not hesitate in holding that such a misdescription could not defeat the power to confess a judgment on the note.

Had the power of attorney left it clear that the note produced was not that referred to in the warrant, then the power could not have been exercised. But, in this case, no doubt can exist that this is the note upon which the attorney was authorized to confess the judgment.

But it is next urged that the attorney in fact had no power to enter the appearance of the makers of the note until it became due, and there is nothing in the record to show that

the written notice had been given thirty days before the confession was made, and in the absence of such evidence, or a finding of the court that the notice had been given, we can not presume the proof was made.

Had this been a confession before the clerk, and not in open court, then there would have been great force in the objection. But where a court of superior general jurisdiction has proceeded to adjudicate and to decree in a matter before it, all reasonable intendments will be indulged in favor of its jurisdiction. But when the court is of limited or inferior jurisdiction, such intendments will not be indulged, but the facts necessary to confer jurisdiction must appear in the proceedings.

This being the presumption, then, the court being of general and superior jurisdiction, and being in session when this judgment was rendered, we must presume that the court first heard evidence that the requisite notice was given to render the note due and payable, before the judgment was rendered. The presumption which the law indulges in favor of its jurisdiction can only be overcome, in a collateral proceeding, when the record itself shows there was no jurisdiction, and there is nothing in the record of the confession in this case which tends in the slightest degree to contradict the presumption. Had the record stated that no proof was heard as to any notice having been given, then the presumption would have been rebutted. Or had it appeared from the record that the note was not, and could not have been due, then the record would have shown that the attorney in fact had no power to enter the appearance of the defendants, and having no power, the court would have failed to acquire jurisdiction of the persons of the defendants, and the case would have been like *Chase* v. *Dana, supra.* But to render this note payable, an act had to be performed that must be proved before a recovery could be had, and we must presume in favor of the judgment of the superior court, that evidence was heard that the notice had been given to render

the note due, and which conferred jurisdiction over the defendants.

It appears from the finding of the court, that a declaration, a warrant of attorney, note and cognovit were filed, the appearance of the defendants entered, and the amount due on the note confessed, and we will presume that the court heard evidence that the required written notice had been given to render the note due and payable. On these findings, and this presumption, we must conclude that the court below acquired full and complete jurisdiction of the parties and of the subject matter, and that the judgment supported the execution sale and sheriff's deed, and they were properly admitted in evidence.

We now come to the question, whether the sheriff's sale was so defectively made as to render it void. The land was, no doubt, susceptible of division, and if so, it should have been divided and sold in legal subdivisions of quarter sections, or of less size. Such is the requirement of the statute, and when it can be done without injury to the parties, the sheriff should make the division and sale as required. But failing to make the division is only an irregularity, which authorized appellant, if he chose to do so, to have the sale set aside on equitable terms, had application been made to the superior court before the time for redemption by the defendants had expired. But this court has never held, nor can it hold, that such a sale is void, and that a party may lie by for years after the sale has been made, the sheriff has conveyed, and others have purchased on the faith of the sale, and thus escape the effect of the sale. On the contrary, it must be held that the defendant waives the objection that the sale was made *en masse*, unless he, within the period allowed for him to redeem, moves to have the sale set aside for that reason. And even then the sale would only be set aside when it appeared that injury resulted to the defendant by the sheriff failing to divide and sell the property in smaller tracts. In this collateral proceeding, the question can not be raised.

It is true, that, on the 31st of August, 1861, appellant entered a motion to set aside the judgment, execution and levy, but on a hearing, this motion was overruled, and that order remains unreversed.

Afterwards, on the 28th day of November, 1862, the defendants entered a motion to set aside the sale of this property on the grounds that the sheriff had not called upon any of the defendants for payment of the execution before making the sale; that the land was sold *en masse*, when it could have been divided, and was sold without a proper and legal notice. On the 6th day of June, 1866, this motion was dismissed for want of prosecution. Thus it is seen that the only remedy which appellant could have rendered availing, was not prosecuted, but abandoned.

Was the notice of the sheriff sufficient to sustain the sale? The eleventh section of the statute regulating judgments and executions, requires the notice to be given, and specifies the length of time it shall be posted up, with its other requisites. But it contains a proviso that a failure to conform to these requirements, or any other irregularity on the part of the sheriff in conducting the sale, shall not affect its validity, unless it shall be made to appear the purchaser had notice of such irregularity. The first section of the act of 1857 requires the same notice to be also published in some newspaper of the county, if one is printed therein, for three weeks successively; but that section also contains a proviso that an omission to give such notice, without good cause, shall not affect the sale, unless it be made to appear that the purchaser had notice of such irregularity at or before the sale. From these enactments, there can be no reasonable doubt that the legislature designed to render unavailing all mere formal and technical objections to the manner of conducting the sale, and even material irregularities, unless the purchaser had notice of their existence at the time he purchased.

Even if there were irregularities in advertising this sale, these purchasers would be protected, unless they were chargeable

with notice. This seems to be the spirit of the statute, and if it were not, the law which protects innocent purchasers in other cases, applies with all its force. Here are purchasers of the property for a large sum, in all probability its full value, and who swear that they had no notice of any defect or irregularity in the judgment, execution, notice, or sale, and are entitled to protection, unless there are irregularities that would avoid the sale, and they were chargeable with notice of their existence.

The notice is good in form, but it is insisted that it was not published the requisite length of time. The notice, as first inserted, seems to have been published for more than three weeks. But after the notice had been published in one or more issues of the paper, immediately under it appeared, in the following numbers of the paper: "the above sale is postponed to the 30th day of November, 1861," and it is insisted the proof shows that this notice of postponement was insufficient, because it was not signed by the sheriff, and was not published for three weeks before the sale.

As to the first objection, we are clearly of the opinion that, inasmuch as the notice first inserted was properly signed by the sheriff, it was not essential that the notice of the postponement should have been. From its position and connection with the notice of the sale, no one could have been uninformed, who saw it, as to the time of the sale. Any person seeing it would have as certainly known that the sale would occur on the 30th day of November, as if the signature of the sheriff had been attached. No one could have been in doubt as to the time, and much less been misled by this notice. We perceive no such irregularity in this as would affect the sale, even if the purchasers were shown to have known the fact at the time they purchased.

As to the question, whether the notice of postponement was published three weeks, the evidence shows it was only sixteen days, although inserted in three weekly issues of the paper. Even if the notice of the postponement of such a sale is

required to be published the same length of time as an ordinary notice, still this appellee can not be affected by the irregularity, unless he had notice either of the irregularity, or such facts as to put him on inquiry and charge him with notice. There is no evidence that he had actual notice, but, on the contrary, it is proved, as far as a negative can usually be proved, that he had no actual notice. These questions are fully discussed in the case of *Jackson* v. *Spink, post,* p.404, and it is there held that such irregularities do not render such a sale void, but simply voidable, when proper steps are taken by the defendant in apt time, and we deem it unnecessary to repeat the discussion of the question.

It may, however, be said the sheriff returned a copy of the notice with the execution, and that he should be presumed to have seen it in tracing title before he purchased. In the first place, it may be answered that the return of the sheriff forms no part of the title. The title would be equally as good without as with a return. Nor can the sheriff, by anything he may say in his return, in the slightest degree affect the rights of the purchaser. The statute has not made the return evidence of anything relating to the title, nor is it made notice. Hence it follows that, even if appellee had been shown to have seen the return, it could not bind or charge him by anything it contained. But a more complete answer is, that, even if it was notice, it could only be to the extent it disclosed facts relating to the notice. In his return he says he sold after having given due notice, and when the copy of the notice returned with the execution is examined, it does not appear that the postponement was published only sixteen days, or any period less than three full weeks. The notice bore date on the 4th day of October, and the sale was made on the 30th day of November following. Had there been one insertion of the notice, and then, in the next issue of the paper, the postponement had been inserted, there would still have been over six weeks before the sale in which to publish it the three weeks required by the statute. Taking the return and the notice together,

there was nothing to excite the least suspicion in the mind of any person that there was not due notice published.

It is urged that the court below erred in admitting the sheriff's deed against the objection of appellant. The objection in the court below was general, while in this court the specific objection is urged that the deed is acknowledged before a notary public. Even if, under our statute, that officer is not empowered to take the acknowledgment of a sheriff's deed, still the objection was general, and we will presume, as the objection could, in all probability, have been readily overcome, had it been pointed out, by proving the signature of the sheriff, that the objection only was intended to apply to the competency and pertinency of the deed as evidence. The acknowledgment is no part of the deed, unless it is intended to convey a married woman's real estate, and when defectively acknowledged, its execution may be proved by any other legitimate evidence. *Stephenson* v. *Thompson*, 13 Ill. 186.

This court has frequently held that, where such objections are intended to be relied on, they should be specifically pointed out, or we will hold them to have been waived, and not consider them when raised for the first time in this court.

Other objections are urged in argument, but they grow out of and are dependent upon the propositions which we have discussed, and are disposed of by the views we have here presented, and further discussion is deemed unnecessary.

Perceiving no error in this record, the judgment of the court below must be affirmed.

*Judgment affirmed.*