# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*NAB Bank v. LaSalle Bank, N.A.*, 2013 IL App (1st) 121147

---

Appellate Court
Caption

NAB BANK, an Illinois Chartered Banking Institution, Plaintiff, v.
LaSALLE BANK, N.A., as Successor Trustee to American National
Bank and Trust Company of Chicago, *et al.* Defendants (Edward G. Tom
and Deborah A. Tom, Counterplaintiffs-Appellees; Wilson Moy,
Counterdefendant-Appellant).

District & No.

First District, First Division
Docket No. 1-12-1147

Filed

January 22, 2013

Held

(*Note: This syllabus
constitutes no part of
the opinion of the court
but has been prepared
by the Reporter of
Decisions for the
convenience of the
reader.*)

The confirmation of the judicial sale of a half interest in a residential
parcel was upheld over the debtor's contentions that the sale price was
too low and the sale was unjust, since the debtor failed to allege any
serious defects in the sale process, and due to the unusual circumstances,
the price was not unconscionably low.

Decision Under
Review

Appeal from the Circuit Court of Cook County, Nos. 02-CH-2449, 01-
CH-12018 cons.; the Hon. Kathleen Pantle, Judge, presiding.

Judgment

Affirmed.

| | |
|---|---|
| Counsel on<br>Appeal | Horwood Marcus & Berk Chtrd., of Chicago (Jeffrey H. Bunn, of counsel), for appellant.<br><br>Tressler LLP, of Chicago ( John P. Maniatis, Charmagne Topacio, and Elizabeth Z. Mathieson, of counsel), for appellees. |
| Panel | JUSTICE DELORT delivered the judgment of the court, with opinion.<br>Presiding Justice Hoffman and Justice Rochford concurred in the judgment and opinion. |

## OPINION

¶ 1                                                    BACKGROUND

¶ 2      This case involves a dispute about the sale price generated at a forced judicial sale of an undivided half-interest in a parcel of real estate. It illustrates the high burden judgment debtors face when trying to overturn such sales because the sale price was too low or the sale was unjust. Fundamental principles of economics and real estate valuation, well recognized in case law, dictate that sales such as the one at issue here are unlikely to generate a price close to the actual appraised value of the subject property. Based on that authority, the court below held that the sale price was neither unjust nor unconscionable. We affirm.

¶ 3      Disputes regarding the subject property, a single-family home in Chicago, began in 1993, and litigation regarding it has lasted almost as long. We set forth only the background necessary to address the issues raised in this latest appeal. In January 2003, the circuit court granted summary judgment in favor of Edward G. Tom and Deborah A. Tom (the Toms) and against Adeline Moy (Adeline) in litigation involving the subject property. Shortly thereafter, in May 2003, Adeline and her husband, Wilson, executed a quitclaim deed (the 2003 deed) conveying the property, which they had owned for over 30 years, to themselves as tenants by the entirety[1].

¶ 4      On November 18, 2008, the circuit court entered a $612,324.68 judgment in favor of the Toms and against Adeline Moy, who is now deceased. No one has ever paid anything to satisfy the judgment. One reason why is because the tenancy by the entirety insulated the subject property from the Toms' attempts to collect on their judgment against Adeline.

¶ 5      In 2009, the Toms filed an action to set aside the 2003 deed. Because Adeline had

---

[1]A tenancy by the entirety protects an "innocent spouse" against having his/her homestead property sold to satisfy the debts of the other spouse. 735 ILCS 5/12-112 (West 2010).

died by then, her widower, Wilson, who was also the surviving tenant by the entirety, was joined as a defendant in the new case. Following the authority of *Premier Property Management, Inc. v. Chavez*, 191 Ill. 2d 101 (2000), the circuit court set aside the 2003 deed because it was fraudulent and done with the sole intent to avoid Adeline's debt obligation to the Toms. Even though Adeline's obligation had not yet been quantified into the 2008 judgment when Adeline executed the 2003 deed, the court found that the debt had been "established" in 2003 through its January 2003 order granting summary judgment against Adeline. This court affirmed that ruling and determined that title to the subject property, located at 213 West 24th Place in Chicago, was properly vested in the estate of Adeline Moy and her widower, Wilson Moy (Wilson), only as tenants in common and not as tenants by the entirety. *NAB Bank v. LaSalle Bank, N.A.*, 2011 IL App (1st) 102594-U.

¶ 6      Thus freed from the obstacle created by the tenancy by the entirety, the Toms continued their efforts to collect their judgment. On May 24, 2011, a levy sale of Adeline's estate's one-half interest in the property was conducted pursuant to article 12 of the Illinois Code of Civil Procedure (Code). 735 ILCS 5/12-101 *et seq.* (West 2010). The Toms were the only bidders, so their bid of $20,000 was successful. Before the Toms could move to confirm the sale, however, Wilson asked the circuit court to set aside the sale completely because the inadequacy of the sale price rendered the sale unconscionable under section 12-144.5 of the Code (735 ILCS 5/12-144.5 (West 2010)). His motion relied on the Toms' own appraisal, which valued the fee simple interest in the entire property at $280,000. The court denied Wilson's motion, finding that the sale price was adequate. On March 20, 2012, the court entered a detailed order confirming the sale and finding that the sale price was not unconscionable and that the sale was not unjust. The court found, among other things, that the fact that the winning bidder would only obtain an undivided half-interest in the property depressed the sale price far below the market value. The result of the sale was that the Toms and Wilson each owned an undivided half-interest in the subject property. This appeal followed.

¶ 7                                         ANALYSIS
¶ 8      The relevant statute (735 ILCS 5/12-144.5(b) (West 2010)) (hereinafter the levy statute) provides in pertinent part:

>      "(b) Upon motion and notice in accordance with court rules applicable to motions generally, including notice to the judgment debtor, the court issuing the underlying judgment shall conduct a hearing to confirm the sale. Unless the court finds that (i) notice as required by law was not given, (ii) the terms of the sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) justice was otherwise not done, the court shall then enter an order confirming the sale. In making these findings, the court shall take into account the purchase price at the sale in relation to the fair market value of the property less the value of any mortgages and liens."

The four enumerated standards in this statute are virtually identical to those in the statute

governing confirmation of judicial sales of properties following a mortgage foreclosure. The foreclosure law (735 ILCS 5/15-1508(b) (West 2010)) provides in pertinent part:

> "(b) Hearing. Upon motion and notice in accordance with court rules applicable to motions generally, which motion shall not be made prior to sale, the court shall conduct a hearing to confirm the sale. Unless the court finds that (i) a notice required in accordance with subsection (c) of Section 15-1507 was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) that justice was otherwise not done, the court shall then enter an order confirming the sale."

These rules promote the policies of stability and permanency in judicial sales. *World Savings & Loan Ass'n v. AmerUs Bank*, 317 Ill. App. 3d 772, 780 (2000).

¶ 9    It is the objecting party's burden to show why the sale should not be confirmed. *Cragin Federal Bank for Savings v. American National Bank & Trust Co. of Chicago*, 262 Ill. App. 3d 115 (1994) (interpreting foreclosure law). Moy had the right under section 12-122 to redeem the property from the levy sale within six months, but he did not do so. 735 ILCS 5/12-122 (West 2010).

¶ 10    Our primary goal in construing a statute "is to ascertain and give effect to the intent of the legislature." *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 37. The plain language of a statute is the most reliable indicator of the legislature's intent. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). When the statutory language is clear and unambiguous, we apply its plain and ordinary meaning without looking to outside sources for aid. *Id.* To determine the plain meaning of statutory terms, we consider the statute itself, the subject it addresses, and the intent of the legislature in enacting it. *Id.* The statute should be read as a whole and construed so that no term is rendered "meaningless or superfluous." *Id.* If, however, the statute is reasonably capable of being understood in different ways, it will be considered ambiguous and the court may then properly consider extrinsic aids of construction to ascertain the legislative intent. *Id.*

¶ 11    The terms "unconscionable" and "justice" are capable of different meanings, so we are required to first examine case law construing them in the context of the levy statute. There is, however, a paucity of case law construing section 12-144.5. This is perhaps because the provisions requiring the court to formally confirm a levy sale and to apply the four-prong test were added by Public Act 91-924. See Pub. Act 91-924 (eff. July 7, 2000) (adding 735 ILCS 5/12-144.5). Before then, a successful purchaser at a nonforeclosure levy sale could merely request a deed from the sheriff at the end of the redemption period. *Northwest Diversified, Inc. v. Desai*, 353 Ill. App. 3d 378, 387 (2004).

¶ 12    In contrast, Illinois courts have scrutinized sales of foreclosed properties for over a hundred years. See, *e.g.*, *Slack v. Cooper*, 219 Ill. 138 (1905); *Coffey v. Coffey*, 16 Ill. 141 (1854); *Longwith v. Butler*, 8 Ill. 32 (1845). Our supreme court adopted the four-part test almost 50 years before the legislature codified it as part of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 *et seq.* (West 2010)). See *Levy v. Broadway-Carmen Building Corp.*, 366 Ill. 279, 288-89 (1937). This long history has provided our courts with frequent occasion to construe the four standards for confirming sales, albeit in the similar context of mortgage foreclosure sales.

¶ 13    Both the levy statute and the foreclosure statute are part of the Illinois Code of Civil Procedure and relate to sales of defendants' property to satisfy judgments against them. "The legislature is presumed to have intended that statutes relating to a single subject and controlled by a single policy will be consistent and harmonious ***." *Chavda v. Wolak*, 188 Ill. 2d 394, 402 (1999). Our supreme court has noted that, "[r]eference to another statute by analogy is also a common method of interpretation and has been relied upon by this court on many occasions." (Internal quotation marks omitted.) *McNamee v. Federated Equipment & Supply Co.*, 181 Ill. 2d 415, 424 (1998). The leading treatise on statutory construction explains:

> "On the basis of analogy, the interpretation of a doubtful statute may be influenced by the language of other statutes which are not specifically related, but which apply to similar persons, things, or relationships. Courts are able to learn the purpose and course of legislation in general by referring to other similar legislation. And by transposing the clear intent expressed in one or several statutes to a similar statute of doubtful meaning, courts are able to give effect to the probable legislative intent and also to establish a more uniform and harmonious system of law." 2B Norman J. Singer & J.D. Shambie Singer, Sutherland on Statutory Construction § 53.3, at 387-89 (7th ed. 2012).

Accordingly, we may examine foreclosure case law to help resolve the issues presented here regarding the levy law.

¶ 14    Our standard of review of a trial court's decision to set aside a foreclosure sale is normally whether the trial court abused its discretion. *Mortgage Electronic Registration Systems, Inc. v. Barnes*, 406 Ill. App. 3d 1, 4 (2010). However, where, as here, the trial court heard no testimony and based its decision entirely on documentary evidence, "the rationale underlying a deferential standard of review is inapplicable, and a reviewing court will make an independent decision on the facts." *Muller v. Firemen's Fund Insurance Co.*, 289 Ill. App. 3d 719, 724 (1997). See also *Rosenthal-Collins Group, L.P. v. Reiff*, 321 Ill. App. 3d 683, 687 (2001); *Northwest Diversified, Inc. v. Mauer*, 341 Ill. App. 3d 27, 33 (2003). In addition, construction of a statute involves a question of law, which we also review *de novo*. *Northwest Diversified, Inc.*, 341 Ill. App. 3d at 33. We adopt these standards for our interpretation of the levy statute and our review of the circuit court's order.

¶ 15    Here, Moy bases his objections to the sale on both the second test, regarding sale price unconscionability, and the fourth test, which requires "justice." As noted above, both the levy statute and the foreclosure statute require that: (1) notice of the sale be properly given; (2) the terms of the sale not be unconscionable; and (3) the sale not be conducted fraudulently. These first three tests "would be normal defenses in a contract case." *Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018, 1023 (7th Cir. 2006).

¶ 16    The last defense, that justice "otherwise [be] done," appears to give courts a small bit of discretion to reject judicial sales. In practice, it is often invoked by defendants making a last-ditch effort to extricate themselves from a lost foreclosure case. However, case law teaches that the court's discretion under the justice clause is extraordinarily narrow. The

rule may seem "pretty open-ended," but it is not "so open-ended as to make the interest conferred by a foreclosure-sale certificate illusory." *Id.* The sale interest is "a solid legally protected interest, its solidity being further suggested by the fact that the vast majority of foreclosure sales are confirmed routinely." *Id.*

¶ 17 The justice clause does not give the court the ability to exercise "untrammeled judicial discretion." *Aurora Loan Services, Inc.*, 442 F.3d at 1028.[2] It merely codifies judicial practices that existed prior to the 1985 enactment of the Illinois Mortgage Foreclosure Law. *In re Jones*, 219 B.R. 1013 (Bankr. N.D. Ill. 1998). Since time immemorial, courts could refuse confirmation of a foreclosure sale because: (1) the sale price was so inadequate that it shocked the conscience; (2) the sale was inequitable; (3) fraud or misconduct was conducted during the sale; and (4) there were irregularities in the proceedings. See *Levy*, 366 Ill. at 288-89 (adopting these standards for Illinois practice); *Graffam v. Burgess*, 117 U.S. 180, 191-92 (1886) (tracing the "justice" doctrine back to its roots in 18th-century English common law and stating, "the rule has become almost universal, that a sale will not be set aside for inadequacy of price, unless the inadequacy be so great as to shock the conscience").

¶ 18 There is no bright-line definition of what defects in the sale process might constitute an "injustice." However, a review of the dozen or so foreclosure cases involving the "justice" clause provides a framework. There is only a handful of reported cases where a court vacated a sale under the justice clause, and almost all of them did so because of an unconscionable sale price, which is a separately listed basis on which a court can decline to confirm a sale. See, *e.g.*, *JP Morgan Chase Bank v. Fankhauser*, 383 Ill. App. 3d 254, 265-66 (2008) (requiring evidentiary hearing regarding conscionability of sale price); *Commercial Credit Loans, Inc. v. Espinoza*, 293 Ill. App. 3d 923, 927-28 (1997) (holding that the bid at a sheriff's sale that was one-sixth of the value of the property was an unconscionable disparity); *Merchants Bank v. Roberts*, 292 Ill. App. 3d 925, 931 (1997) (vacating sale based not only on unconscionable price but also on credible argument that wrong parcel was sold). Cases where courts vacated sales based on the justice clause, but not simply because of a low sale price, share the common theme of errors relating to the actual sale process: *Fleet Mortgage Corp. v. Deale*, 287 Ill. App. 3d 385, 390 (1987) (vacating sale that should have been cancelled but was nonetheless held because of a clerical error); *Citicorp Savings of Illinois v. First Chicago Trust Co. of Illinois*, 269 Ill. App. 3d 293 (1995) (refusing confirmation of sale because unfairness was shown which was prejudicial to an interested party); *New Century Mortgage Corp. v. Pinto*, No. 01 C 1075, 2002 U.S. Dist. LEXIS 21452, at *4-5 (N.D. Ill. Oct. 30, 2002) (vacating sale due to significant error in title search affecting marketability of title). These cases, however, "turn on conventional notions of estoppel rather than on undefined concepts of justice." *Aurora Loan Services, Inc.*, 442 F.3d at 1029.

---

[2]Because the federal courts have interpreted the Illinois foreclosure sale statute so frequently, we look to their decisions for their persuasive value, rather than their binding authority. *Hinterlong v. Baldwin*, 308 Ill. App. 3d 441, 452 (1999).

¶ 19    The "justice clause" provides a narrow window through which courts can undo sales because of serious defects in the actual sale process, and not because of alleged errors in the process leading up to the underlying judgment. Moy alleges no such defects, so the justice clause is inapplicable here.

¶ 20    Moy also argues that the sale is invalid because of the large difference between the $20,000 bid and the sum of $120,000, which is one-half the full appraised value of the property. Merely comparing the bid to the appraisal, however, hardly establishes whether the price is unconscionably low. It is well recognized that it is unusual for land to bring its full, fair market value at a forced sale. Inadequacy of sale price is not a sufficient reason, standing alone, to deny confirmation of a judicial sale. *Lyons Savings & Loan Ass'n v. Gash Associates*, 189 Ill. App. 3d 684, 689 (1989) (noting that property does not bring full value at forced judicial sales and that mere inadequacy of price "is no reason for upsetting a judicial sale" (internal quotation marks omitted)). While courts cannot guarantee that mortgaged property will bring its full value, they can prevent "unwarranted sacrifice" of a debtor's property. *Levy*, 366 Ill. at 288. When there is no fraud or other irregularity in the foreclosure proceeding, however, the price at which the property is sold is the conclusive measure of its value. *Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 35 (citing *Loeb v. Stern*, 198 Ill. 371 (1902)).

¶ 21    The Seventh Circuit Court of Appeals noted the difficulty in overturning judicial sales in *United States v. Buchman*, 646 F.3d 409, 410 (7th Cir. 2011), stating: "[i]f buyers believe that the parcels they acquire at auction can be snatched back whenever they have made a good deal, they will pay less at foreclosure sales–and borrowers *** will be worse off as a result." The court also noted that auctions such as judicial sales yield "a real price," while "appraisals are just forecasts." *Id.* at 411. Generally, the price paid for the property at a recent sale is the best evidence of value. *Hewitt v. Hurwitz*, 227 Ill. App. 3d 616 (1992).

¶ 22    Wilson and the Moys now jointly own the property as tenants in common. A tenant in common cannot: (1) exclude the other co-tenants nor (2) designate any portion of the real estate as his own. *Massman v. Duffy*, 333 Ill. App. 30, 40 (1947). Additionally, each tenant in common has a right to financial contribution from the other. For example, each co-tenant is responsible for real estate taxes and insurance. See *Kratzer v. Kratzer*, 130 Ill. App. 2d 762, 768 (1971). As it is unlikely the parties will simply agree to share the single-family house, the Toms will have to file yet another action for partition and sale of the property in order to obtain anything to satisfy their judgment, an issue that was mentioned below. In a partition action, there will likely be disputes about whether Wilson should receive credit for property taxes and upkeep he might have paid. The parties still dispute whether Wilson has a homestead interest in the property that might protect it from partition and another forced sale, an issue not presented in this appeal. The looming cost and delay of this additional future litigation undoubtedly depressed the sale price.

¶ 23    The circuit court also noted that the fact that the auction was for an undivided half-interest in the property presented "unusual circumstances" that depressed the bid price, and that no one had come forward (including, we note, Moy, who forfeited his redemption right) to pay more than $20,000 for the one-half interest. Finally, the circuit

court found that the appraisal itself might have been overly generous given the unfavorable current market conditions. We agree with the circuit court's analysis.

¶ 24 It is often said that the whole may be greater than the sum of its parts. As applied here, that maxim teaches that the fair sale price of a one-half interest in a single-family home must be significantly discounted from the amount calculated by merely dividing the price of the entire property by two. Established principles of real estate appraisal, as set forth in case law from other jurisdictions, particularly tax and bankruptcy cases, support this rule. See, *e.g.*, *First National Bank of Chicago v. Steinbrink*, 812 F. Supp. 849, 853 (N.D. Ill. 1993) (noting that "the nature, worth, and marketability of fractional interests in property is fundamentally different from investment property owned in whole"); *Jarvis v. Boatmen's National Bank of St. Louis*, 478 S.W.2d 266, 275 (Mo. 1972) (" 'It is conceded that it is proper to make a deduction in valuing an undivided fractional interest in real property because of the diminution of value which results from the fact that it is an undivided fractional interest only.' " (quoting *In re Gibert's Estate*, 163 N.Y.S. 974, 974 (N.Y. App. Div. 1917))). Other cases where courts discounted fractional interests include: *Estate of Williams v. Commissioner*, 75 T.C.M. (CCH) 1758 (T.C. 1998) (noting banks will not lend money to owners of fractional interests in real estate without the consent of the co-owners and that there was no "market" for fractional interests); *Estate of Stevens v. Commissioner*, 79 T.C.M. (CCH) 1519 (T.C. 2000) (increasing discount over the cost of partition to also include factors of control and marketability); *Anastos v. Sable*, 819 N.E.2d 587 (Mass. 2004) (discounting partnership share because shareholder would lack control over the financial, operational and management decisions and shares would be illiquid).

¶ 25 Taking these principles into account, the sale was just, and the sale price was not unconscionable. Accordingly, we find that the circuit court correctly confirmed the sale.

¶ 26 CONCLUSION

¶ 27 For these reasons, we affirm the judgment of the circuit court.

¶ 28 Affirmed.