2019 IL App (1st) 181136

SIXTH DIVISION
June 14, 2019

No. 1-18-1136

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PRESERVATION HOLDINGS, LLC, | ) | Appeal from the Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 14 L 50823 |
| | ) | |
| KARL NORBERG; PAMELA GLEICHMAN; | ) | |
| GLEICHMAN & COMPANY, INC.; GN | ) | |
| HOLDINGS, LP; and HARBOR HILLS | ) | |
| ASSOCIATES, LP, | ) | |
| | ) | |
| Defendants-Appellants | ) | |
| | ) | The Honorable Alexander P. White, |
| (Richard P. Olson, as Trustee of the Promenade | ) | Judge Presiding. |
| Trust, Intervening Plaintiff-Appellee). | | |

PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion.
Justices Cunningham and Connors concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendants-appellants Karl Norberg, Pamela Gleichman (Gleichman), Gleichman & Company, Inc., GN Holdings, LP, and Harbor Hills Associates, LP, appeal from an order of the circuit court that approved the judicial sale of certain partnership interests to partially satisfy judgments entered in favor of appellees Preservation Holdings, LLC (Preservation Holdings), and Promenade Trust (Promenade). We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The underlying judgments resulted from litigation brought in Maine state courts. The final judgments of the Maine courts were registered in the circuit court of Cook County pursuant to the Uniform Enforcement of Foreign Judgments Act (735 ILCS 5/12-650 *et seq.* (West 2016)). The Maine courts also entered charging orders against the distributional and transferable interests of Gleichman in 51 specified limited liability companies and limited partnerships.

¶ 4    The only issue before us on this appeal is whether the circuit court erred in approving the sale of partnership interests to partially satisfy the Maine judgments. Therefore, we omit discussion of the Maine court proceedings and the procedural history leading up to when the circuit court of Cook County domesticated the Maine judgments. At that point, the Maine judgments were still unsatisfied, so the plaintiffs pursued Illinois judicial remedies to collect the balances due on them. On February 22, 2016, as the Maine court had done before, the circuit court imposed charging orders against the distributional and transferable interests of Gleichman in 51 specified limited liability companies and limited partnerships, pursuant to section 703(a) of the Uniform Limited Partnership Act (2001) (805 ILCS 215/703(a) (West 2016)) and section 30-20 of the Limited Liability Company Act (805 ILCS 180/30-20(a) (West 2016)).

¶ 5    After the circuit court granted plaintiffs' joint motion to foreclose on Gleichman's interests, plaintiffs filed a joint petition to set the terms of the foreclosure sale, which provided detailed proposed terms of the sale. The petition included copies of certificates evidencing Gleichman's percentage interests in the limited liability companies and limited partnerships. And, as is relevant to this appeal, the petition contained a proposed order providing that the Cook County sheriff would sell, at a public sale, Gleichman's interests in 2 limited liability partnerships (Stanford Management, LLC (Stanford), and Acadia Maintenance, LLC (Acadia))

and 46 specifically named limited partnerships. The proposed order provided that the interests would be sold *seriatim* in the sequence specified in the order. According to the draft order, Preservation Holdings held a judgment against Gleichman for about $800,000, and Promenade Trust held judgments in the approximate amounts of $31 million, $5 million, and $440,000.

¶ 6    Gleichman objected to the petition. Among other things, she claimed she had no transferable interest in Stanford Management, LLC, because only an entity known as the "SNH [Scarcelli-Nordberg Holdings] Trust" and an individual, Rosa Scarcelli, did. Plaintiffs argued that the text of the SNH Trust agreement demonstrated that it was a revocable trust created by Gleichman for her own benefit, in which Gleichman held a distributional interest. As such, they claimed, Gleichman's creditors could reach any assets in the SNH Trust. They also noted that the court had already addressed the same dispute in an earlier order and had ruled against Gleichman's position. Holding consistently with its prior order, the circuit court overruled Gleichman's objections to the petition and entered an order of sale in the form proposed by plaintiffs.

¶ 7    On October 31, 2017, the Cook County sheriff held a judicial sale and sold Gleichman's distributional interests in the two LLCs and 46 limited partnerships, as a single group, to the Promenade Trust for $4.8 million. The proceeds were far less than the amount of the outstanding judgments in favor of Promenade, and it moved to confirm the judicial sale. Gleichman objected, arguing *inter alia* that there were irregularities in the sale and that the sale price was unconscionably low. Gleichman supported her argument with an affidavit from Sean Hamilton, an expert in the sale and valuation of apartment buildings. Hamilton opined, in pertinent part:

> "7. I have been asked to determine the value of the economic interest of Pamela Gleichman in a portfolio of properties

in which she is the developer, General Partner and, in some cases, the Limited Partner. The portfolio includes properties in Pennsylvania and Maine in which Gleichman owns from 50% to 100%. A portion of the portfolio (in the Multifamily Preservation and Revitalization ('MPR') program) has restrictions as to the timing for which they can be sold until 2027. ***

***

9. My opinion, to a reasonable degree of certainty in the field of low income, multifamily residential rental property valuation, of the fair market value of Pamela Gleichman's economic interest for the unrestricted properties on Chart A is $21,864,650 million [*sic*] (including the cash reserves on hand) and $3,634,924 for the restricted properties, with cash on hand, based on the value of the real estate held (net of mortgages and expected 6% sales commissions) by each entity listed, for a total net present value of Pamela Gleichman's economic interests of $25,499,574.

10. In order to achieve the highest and best price, the sale of these properties should be conducted through a qualified and experienced broker in the field. Through my work in this field, I have identified over 2,000 different entities and individuals who have expressed interest in buying low-income properties across the country. Any sale of Gleichman's interests that does not, at a

minimum, notify the top brokers of low-income properties (such as Marcus & Millchap, Massey Knakal, Newmark Grubb Knight + Frank, Rosewood Realty Group, Cushman & Wakefield, CBRE, Hendrix, ARA, Ben Frederick Realty and Holiday Fenglio Fowler[)] will not achieve a significant price compared to the interests' value."

The affidavit also included a spreadsheet listing the values of various properties.

¶ 8 After briefing on April 26, 2018, the circuit court overruled Gleichman's objections and confirmed the judicial sale. In particular, the court found that Hamilton's affidavit was unpersuasive because it valued the partnerships' real estate as a whole, rather than only Gleichman's distributional interests in the partnerships, which were the actual assets sold at the foreclosure sale. This appeal by Gleichman and Norberg followed.[1]

¶ 9 In her notice of appeal, Gleichman stated she was appealing only the April 26, 2018, confirmation of sale order. However, in her docketing statement, she indicated she would raise four issues that arose from the protracted proceedings before the entry of that order, namely, whether the court erred by: (1) finding it had personal jurisdiction over her, (2) denying her motion to dismiss due to a similar pending action in Maine, (3) ruling that Illinois law—rather than Maine law—governed the availability of foreclosure of Maine LLCs, and (4) failing to hold an evidentiary hearing to determine whether Preservation Holdings, LLC's judgment was already satisfied. The docketing statement then listed a fifth issue: whether the court erred in confirming the sale.

¶ 10 Plaintiffs filed a motion in this court to partially dismiss the appeal as to the first four enumerated issues in the docketing statement, arguing that this court was without jurisdiction to

---

[1]For simplicity, we will only refer to Gleichman in the remainder of this order.

consider them. We determined that plaintiffs were correct and issued an order dismissing the appeal as to those four issues. On September 7, 2018, this court issued a partial mandate, consisting of a certified copy of the partial dismissal order. On December 18, 2018, Gleichman filed her brief, which included arguments attacking the circuit court orders over which we found we did not have jurisdiction, essentially asking this court to consider an appeal of its own order. On plaintiff's motion, we struck the portions of Gleichman's brief that addressed those issues, and we do not address those issues herein.

¶ 11 Thus, the only remaining issue for our review is whether the court erred in confirming the judicial sale of the partnership interests. Gleichman contends that the court should not have confirmed the sale because (1) the sale price was unconscionably low, and the circuit court failed to properly value the interests sold so as to ascertain whether the sale was just, (2) the interests should have been sold *seriatim* rather than as a single group, (3) the two LLCs, Stanford and Acadia, should not have been included in the sale, and (4) the combination of these three factors made the sale unjust. We will consider each argument in turn but begin with an overview of the applicable law.

¶ 12                                    II. ANALYSIS

¶ 13 Section 12-112.5 of the Code of Civil Procedure (Code) (735 ILCS 5/12-112.5 (West 2016)) addresses execution on charging orders against partnership interests. It states: "If a statute or case requires or permits a judgment creditor to use the remedy of a charging order, said remedy may be brought and obtained by serving any of the various enforcement procedures set forth within this Article XII [of the Code]." *Id.* That leads us to section 12-144.5(b) of the Code (*id.* § 12-144.5(b)), which governs judicial sales of foreclosed property. It establishes who has

the burden of showing error with respect to the sale and what criteria the court must use in determining whether to confirm the sale. It provides in part:

> "Unless the court finds that (i) notice as required by law was not given, (ii) the terms of the sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) justice was otherwise not done, the court shall then enter an order confirming the sale. In making these findings, the court shall take into account the purchase price at the sale in relation to the fair market value of the property less the value of any mortgages and liens." *Id.*

In *NAB Bank v. LaSalle Bank, N.A.*, 2013 IL App (1st) 121147, ¶¶ 8-13, the court noted that there was a "paucity of case law" construing section 12-144.5, but that, since the tests in that section were virtually identical to those in the statute governing postmortgage foreclosure sales (735 ILCS 5/15-1508(b) (West 2010)), the court should look at cases interpreting section 15-1508(b) for guidance when considering section 12-144.5 sales. Since section 12-144.5 begins with the word "unless," it is clearly the objecting party's burden to show why the sale should not be confirmed. See generally *Cragin Federal Bank for Savings v. American National Bank & Trust Co. of Chicago*, 262 Ill. App. 3d 115 (1994) (interpreting foreclosure law). These provisions are mandatory and restrict the court's discretion to approve a sale. *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 18.

¶ 14    Our standard of review of a trial court's decision to confirm a foreclosure sale is normally whether the court abused its discretion. *Mortgage Electronic Registration Systems, Inc. v. Barnes*, 406 Ill. App. 3d 1, 4 (2010). However, where, as here, the trial court heard no testimony and based its decision entirely on documentary evidence, "the rationale underlying a deferential

standard of review is inapplicable, and a reviewing court will make an independent decision on the facts." *Muller v. Firemen's Fund Insurance Co.*, 289 Ill. App. 3d 719, 724 (1997); see also *Rosenthal-Collins Group, L.P. v. Reiff*, 321 Ill. App. 3d 683, 687 (2001); *Northwest Diversified, Inc. v. Mauer*, 341 Ill. App. 3d 27, 33 (2003). We therefore review the circuit court's decision to confirm the sale of the partnership interests in this case *de novo*.

¶ 15    As noted above, section 12-144.5(b) requires in part that (1) notice of the sale be properly given, (2) the terms of the sale not be unconscionable, and (3) the sale not be conducted fraudulently. 735 ILCS 5/12-144.5(b) (West 2016). These first three tests "would be normal defenses in a contract case." *Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018, 1023 (7th Cir. 2006). The last defense, that justice "otherwise [be] done" (735 ILCS 5/12-144.5(b) (West 2016)), appears to give courts a small bit of discretion to reject judicial sales. But as the *NAB Bank* court explained, that discretion is extraordinarily narrow. *NAB Bank*, 2013 IL App (1st) 121147, ¶ 16. The sale interest is "a solid legally protected interest, its solidity being further suggested by the fact that the vast majority of foreclosure sales are confirmed routinely." *Aurora Loan Services*, 442 F.3d at 1023. When there is no fraud or other irregularity in the foreclosure proceeding, the price at which the property is sold is the conclusive measure of its value. *Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 35 (citing *Loeb v. Stern*, 198 Ill. 371, 383 (1902)). This principle is related to the well established economic doctrine that "fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." (Internal quotation marks omitted.) *United States v. Cartwright*, 411 U.S. 546, 551 (1973). Of course, in a forced judicial sale, the price will be lower than the arm's-length ideal because the marketplace is constricted. In the forced sale

setting, the seller is under judicial compulsion to sell, and the buyers may not have the ability to learn all the relevant facts regarding the asset for sale. So as the *NAB Bank* court observed, property sold at a forced sale does not generate a true fair market value price. See *NAB Bank*, 2013 IL App (1st) 121147, ¶ 20.

¶ 16    Applying these principles, the *NAB Bank* court examined the sale at issue, the sale of a one-half tenancy in common in a single-family home. Because the successful bidder would have to pursue a partition lawsuit and other litigation to liquidate his one-half tenancy in common interest, the court concluded:

> "[T]he whole may be greater than the sum of its parts. As applied here, that maxim teaches that the fair sale price of a one-half interest in a single-family home must be significantly discounted from the amount calculated by merely dividing the price of the entire property by two." *Id.* ¶ 24 (citing cases involving the sale of undivided fractional interests in various assets).

¶ 17    Gleichman contends that the court should have undertaken its own analysis to determine an appropriate value for the interests sold at the judicial sale. But that simply is not the law. As explained above, the sale is presumptively valid, and it is the debtor's burden to show why the price is unconscionably low. To warrant an evidentiary hearing on the unconscionability of the sale price, the debtor cannot merely speculate, but must present a "current appraisal or other current indicia of value which is so measurably different than the sales price as to be unconscionable." *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 115 (1993).

¶ 18    Here, all Gleichman presented was the affidavit of Hamilton. This affidavit suffered from several deficiencies that rendered it insufficient to meet the evidentiary standards demanded by

*Resolution Trust Corp.* As the circuit court correctly found, Hamilton opined as to the fair market value of the real estate owned by the LLCs and limited partnerships, *not* the value of Gleichman's distributional interests in them. This is a distinction with a significant difference. A bidder who acquires a distributional partnership interest at a judicial sale does not step into the shoes of his predecessor because the bidder acquires no management role and no right to receive or inspect the books and records of the partnership. Section 30-20(a) of the Limited Liability Company Act provides in part as follows:

> "A charging order constitutes a lien on a judgment debtor's distributional interest and requires the limited liability company to pay over to the person to which the charging order was issued any distribution that would otherwise be paid to the judgment debtor. A charging order grants no other rights with respect to the assets or affairs of the company." 805 ILCS 180/30-20(a) (West 2016).

See also 805 ILCS 215/702 (West 2016) (establishing similar limitations regarding charging orders which precipitate transfers of interests in limited partnerships). And as the *NAB Bank* court explained, a partial interest in an entity will not necessarily be worth the corresponding fractional amount of the whole asset. See *NAB Bank*, 2013 IL App (1st) 121147, ¶ 24. Finally, property will normally sell at a forced judicial sale for a price significantly less than it would in an arm's-length transaction. See *id.* ¶ 20. Therefore, we cannot overturn the sale based on unconscionability of the sale price.

¶ 19    Gleichman next contends that her partnership interests should have been sold *seriatim*, rather than as a single group as required by the circuit court's order. The plaintiffs counter that an objection to an *en masse* sale can only succeed if the sale generated an inadequate price, citing

*Lurton v. Rodgers*, 139 Ill. 554, 561 (1891) ("[w]here property susceptible of division has been sold *en masse* for an inadequate price, this court has held, in a number of cases, that the sale will be set aside"). While *stare decisis* requires us to follow an Illinois Supreme Court opinion, even one from 1891, the *Lurton* court's statement appears to be merely *dictum* as the court did not specifically hold that an *en masse* sale could only be overturned on that basis if the price was inadequate.

¶ 20    The plaintiffs' second point is more persuasive: Gleichman forfeited this argument by failing to object to the *en masse* auction at the hearing to confirm the sale. See *Osgood v. Blackmore*, 59 Ill. 261, 268 (1871) ("defendant waives the objection that the sale was made *en masse*, unless he *** moves to have the sale set aside for that reason"). This case was exhaustively litigated. In fact, the motion to confirm the sale was briefed not once, but twice, because the court allowed a sur-response and sur-reply. Gleichman did not raise this issue in that briefing but did interpose many other objections to the confirmation and to virtually every motion plaintiffs filed below. Gleichman has not filed a reply brief, addressing the forfeiture issue that plaintiffs raised. However, in her opening brief, she acknowledged that "[t]he argument was not initially raised because it was not known at the time that the sale occurred in such a manner." But Gleichman should have known. At the circuit court hearing on the motion to confirm sale, counsel for Promenade stated that, besides the sheriff's staff, only he and counsel for Preservation Holdings attended the sale. The sale was open to the public, and nothing prevented Gleichman from monitoring it to ensure that the sheriff conducted it in punctilious conformity with the court's order. We therefore find the point forfeited and will not disturb the confirmation of the sale on this basis. See *id.*

¶ 21 Gleichman's next contention of error is that interests in the two LLCs, Stanford and Acadia, should not have been included in the sale because of defects in the certificates evidencing her interest in the LLCs. The certificates are signed by Rosa Scarcelli as manager of each respective LLC, and are in essentially identical form. Each recites that Gleichman "purports to be the record holder of a 49% membership interest *** of the aforementioned LLC." Notwithstanding this recital, Gleichman contends that she had no interest in the LLCs. She notes that the certificates qualify their assertion of Gleichman's ownership with the verb "purports" and contain improper designations, both of which render the certificates of questionable veracity. The circuit court rejected this objection on several bases. It found that Gleichman forfeited this argument by failing to object to the draft order submitted by plaintiffs (that listed the two LLCs first in a list of 48 entities with interests to be sold) and that she had no standing to raise it because it was a point for Stanford and Acadia to make. The court also noted that it had ruled against Gleichman on the issue several times before, including when it entered the charging orders against the LLCs. The court also relied on section 2-1403 of the Code (735 ILCS 5/2-1403 (West 2016)), which provides that assets held in trust (such as the SNH Trust, one of the owners of Stanford) for the benefit of a judgment debtor are only shielded from a creditor if the trust has been created, in good faith, by a person other than the judgment debtor. Otherwise, the court aptly reasoned, "all debtors would place their own assets in trust in order to avoid creditors, and supplementary proceedings would not exist." We agree that the circuit court did not err in denying Gleichman's objections to the Stanford and Acadia certificates for the reasons stated.

¶ 22 Finally, Gleichman contends that the combination of these three deficiencies in the judicial sale made the sale unjust in an overall sense. Because we have found that none of the three alleged deficiencies established a basis to overturn the sale, we cannot find that the

combination of them rendered the sale invalid. Accordingly, we find that the circuit court correctly confirmed the sale.

¶ 23                                    III. CONCLUSION

¶ 24    We affirm the circuit court's approval of the judicial sale to partially satisfy judgments entered in favor of appellees Preservation Holdings and Promenade.

¶ 25    Affirmed.