2022 IL App (1st) 0425-U
No. 1-21-0425

FIRST DIVISION
May 23, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as Trustee under the pooling and servicing agreement, dated as of June 1, 2004, among Citigroup Mortgage Loan Inc., National City Mortgage Co, and U.S. Bank National Association, | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County, Chancery Division<br><br>No. 2009 CH 10692 |
| | ) ) | The Honorable<br>Darryl B. Simko, |
| Plaintiff-Appellee, | ) ) | Judge Presiding. |
| v. | ) ) ) | |
| VICKY DE LA CRUZ a/k/a VICKY M. DE LA CRUZ a/k/a VICTORIA M. DE LA CRUZ a/k/a VICTORIA DE LA CRUZ; JULIO A. DE LA CRUZ a/k/a JULIO DE LA CRUZ; CITIBANK; FEDERAL SAVINGS BANK; UNKNOWN HEIRS AND LEGATEES OF JULIO DE LA CRUZES, if any; UNKNOWN OWNERS AND NON-RECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants-Appellants. | ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Hyman and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the circuit court's order confirming the judicial sale, as well as the court's denial of the defendants' motion to reconsider that order. We find that the circuit

court did not abuse its discretion in rejecting the defendant's objection to the sale, as he failed to show that the court erred in failing to apply payments of over $100,000 that the defendants allege to have made during their bankruptcy proceedings. The court also properly denied the defendant's argument that the alleged payments should have been applied to the unpaid principal balance rather than to the interest.

¶ 2    Defendant-Appellant Julio De La Cruz ("Defendant") appeals[1] from the circuit court's approval of the judicial sale of certain real property following a mortgage foreclosure, as well as the denial of Defendant's Motion to Reconsider the order approving the sale. Defendant and his wife, a co-defendant in the underly case, objected to the sale of the property, arguing that they had entered Chapter 13 bankruptcy proceedings after the entry of the judgment of foreclosure and sale, and in that time made payments of approximately $100,000[2] toward the mortgage arrearage that the circuit court should have credited to them in the order approving the judicial sale.

¶ 3    The court entered an order confirming the sale, which made no mention of the De La Cruzes' alleged payments. They filed a motion to reconsider the order, making the same argument that certain payments made during bankruptcy were never accounted for, and the defendants were entitled to a credit for those payments in the report of sale and distribution. They further argued that the total amount of their alleged payments should have gone towards the unpaid principal balance, because the interest could not be charged during bankruptcy. The court denied their motion to reconsider. Defendant Julio De La Cruz now appeals from that order.

¶ 4                                    BACKGROUND

¶ 5    The underlying matter arises from a residential mortgage foreclosure suit filed by National City Bank against Julio and Vicky De La Cruz on March 9, 2009. The defendants were served

---

[1] While both Julio and Vicky De La Cruz were the primary defendants in the underlying matter, Vicky is not a party to this appeal.

[2] Four different figures appear in the parties' arguments and in the record, and it is unclear whether Defendant claims to have made payments totaling $114,319.46, $114,413.62, $112,466.22, or $102,173.13. As Defendant primarily refers to the amount as "over $100,000," each figure is less than the lien on the property at the time of the judgment of foreclosure and sale, and this does not impact our decision, we proceed with the same phrasing.

with the summons and complaint through personal service on Vicky and substitute service on Julio through service on Vicky. The De La Cruzes did not answer the complaint. On August 24, 2010, the circuit court entered: (1) an order of default against the De La Cruzes; (2) an order of judgment for foreclosure and sale of the De La Cruzes' primary residence ("the Property") with a finding that the amount due on the mortgage note was $350,226.43; (3) an order substituting U.S. Bank National Association as Trustee Plaintiff.[3]

¶ 6     The date of the judicial sale was continued for several years. Prior to the sale, the De La Cruzes filed for Chapter 7 bankruptcy on November 30, 2010 and Chapter 13 bankruptcy on January 9, 2013. Their personal liability under the defaulted mortgage note was discharged on April 7, 2011, under the Chapter 7 bankruptcy. The Chapter 13 bankruptcy case was closed on March 6, 2019 without a final discharge, because, according to the De La Cruzes, they were not eligible for bankruptcy when they filed their petition. However, they claim to have made payments of some amount totaling over $100,000 towards the mortgage arrearage over the course of the bankruptcy proceedings.

¶ 7     The judicial sale was eventually scheduled to take place on May 13, 2019. On that date, the De La Cruzes filed an appearance through counsel for the first time in this matter, and moved to quash service or, in the alternative, vacate the judgment of foreclosure and sale and the order of default from August 24, 2010. They argued that Vicky De La Cruz, who the original plaintiff claimed to have served via personal service, had in fact never been served with process and the summons was defective because it was not sealed by the Clerk of the Court. They further argued

---

[3] The Trustee Plaintiff was incorrectly identified in this order, and the proper name of the Trustee was eventually substituted as Plaintiff by court order on March 29, 2021, upon Plaintiff's motion to amend the January 24, 2020 order approving the judicial sale of the Property.

that they made payments totaling $114,319.46 while the bankruptcy was pending, and those payments should have been accounted for in the foreclosure order.

¶ 8    In support of the argument that they made payments totaling over $100,000 towards the mortgage arrearage after filing the bankruptcy petition, the De La Cruzes attached a statement dated March 18, 2019 from Ocwen Loan Servicing, which states that the De La Cruzes had a "Total Post-Petition Unpaid Payment Amount" of $114,413.62. This was the only evidence that the defendants produced to attempt to prove that they had made the alleged payments that they argued should have been credited to them in the court's order of foreclosure and sale. Plaintiff contested the alleged improper or incomplete service of process, and argued that the motion to vacate was untimely, as the court entered a final judgment on August 24, 2010. The circuit court delayed ruling on the motion until it had conducted an evidentiary hearing, which took place on October 18, 2019. The record does not contain a transcript or bystander's report of this hearing. The court denied both parts of the De La Cruzes' motion on October 18, 2019; the order does not state the court's basis for denying the motion.

¶ 9    On October 21, 2019, Plaintiff filed a motion to confirm the judicial sale and Report of Sale and Distribution. The Report indicated that Plaintiff purchased the Property in a credit bid of $418,000, with a total amount due of $625,762.76, resulting in a deficiency of $208,112.76. The Report did not indicate any payments made by the De La Cruzes. The defendants filed their objections to the sale on December 2, 2019, again raising their argument that they had made payments totaling $114,319.46 during the Chapter 13 bankruptcy proceedings, which made it "impossible for the Court to determine whether there is a sur-plus [*sic*] or a deficiency." They also stated in their response that the court did not consider whether interest continued to accrue at the 9% post-judgment statutory interest rate during the pendency of the Chapter 13 bankruptcy,

although they did not provide an argument in support of their implications that the accrual of interest was suspended during that time. Once again, the only evidence the defendants attached was the statement from Ocwen Loan Servicing indicating a "Total Post-Petition Unpaid Payment Amount" of $114,413.62. The court entered an order approving the Report of Sale and confirming the sale on January 24, 2020, with the $208,112.76 deficiency.

¶ 10     On February 24, 2020, the De La Cruzes, now appearing *pro se*, filed a motion to reconsider the order approving the sale. In the motion, they argued that they made payments totaling $102,172.13 during the time that their Chapter 13 bankruptcy case remained open, attaching as evidence the Chapter 13 Standing Trustee's Final Report and Account, which was entered on March 6, 2019. They again claimed that the circuit court failed to account for the payments they made—now claiming that they totaled $102,172.13—and that the court should have applied the full amount to the principal. The De La Cruzes contended that, by their calculations, the sale should have actually resulted in a surplus of $74,158.02. They claimed that the circuit court's failure to account for these payments meant that "substantial justice was not done" and the judicial sale was conducted fraudulently. The motion to reconsider was the first time that the De La Cruzes provided the court with the March 6, 2019 Chapter 13 Standing Trustee's report; they relied only on the Ocwen Loan Servicing statement in their December 2, 2019 objections to the judicial sale. They did not explain in their motion for reconsideration the source of the discrepancy in the alleged bankruptcy payment amounts. Plaintiff objected, and filed: (a) a motion to deny the motion for reconsideration; (b) a motion to amend the order approving sale to correct the name of the plaintiff; and (c) a motion to substitute the party plaintiff. Defendants filed their objections to all of Plaintiff's motions.

¶ 11     On March 29, 2021, the circuit court granted Plaintiff's motion to substitute plaintiff and amend the January 24, 2020 order approving the sale; the court also denied the De La Cruzes' motion for reconsideration.

¶ 12     Julio De La Cruz appealed, challenging both the January 24, 2020 order approving the sale, and the March 29, 2021 order denying his motion to reconsider the former order.

¶ 13                                          ANALYSIS

¶ 14     We review the circuit court's approval of a judicial sale under an abuse of discretion standard. *CitiMortgage, Inc. v. Bermudez*, 2014 IL App (1st) 122824, ¶ 57. An abuse of discretion occurs where the circuit court's ruling rests on an error of law or where no reasonable person would take the view adopted by the circuit court. *Id.*; *Lakefront Plumbing & Heating, Inc. v. Pappas*, 356 Ill.App.3d 343, 350 (1st Dist. 2005). This standard is greatly deferential to the determinations of the circuit court. *People v. Coleman*, 183 Ill.2d 366, 387 (Ill. 1998).

¶ 15     Pursuant to the Illinois Mortgage Foreclosure Law ("Foreclosure Law"), a circuit court has broad discretion to approve or reject a judicial sale; however, the court's discretion to refuse confirmation of the sale is limited to four specific situations enumerated in Section 1508(b) of the Law. *Mortgage Electronic Registration Systems, Inc. v. Barnes*, 406 Ill.App.3d 1, 4 (1st Dist. 2010); *Deutsche Bank Nat. Trust Co. v. Snick*, 2011 IL App (3d) 100436, ¶ 10; 735 ILCS 5/15-1508(b) (West 2021). As provided by Section 1508(b), "the court *shall* confirm the sale unless the court finds that: (i) proper notice of the sale was not given; (ii) the terms of the sale were unconscionable; (iii) the sale was conducted fraudulently; or (iv) justice was otherwise not done." *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 18 (quoting 735 ILCS 5/15–1508(b) (West 2010)). A party seeking to vacate a judgment approving a judicial sale must establish either that any of the three specific circumstances provided in Section 1508(b) were met, or show that

unfairness occurred and prejudiced the moving party. *Id*. As the court is *required* to approve the sale unless one or more of these four grounds for denial have occurred, the movant bears the burden of proving the existence of any of these circumstances. *Beal Bank v. Barrie*, 2015 IL App (1st) 133898, ¶ 28.

¶ 16    In the present matter, Defendant argues that the basis for reversing the circuit court's approval of the judicial sale is that "justice was not otherwise done," pursuant to Section 1508(b)(iv), because the circuit court's failure to apply the payments he made during his bankruptcy case prevented him from protecting his interest in the Property. This Court has described the fourth basis for rejecting a judicial sale as one that defendants often invoke as a last-ditch effort to save themselves from a lost foreclosure case; however, case law shows that the court's discretion to reject a sale pursuant to Section 1508(b)(iv) is "extraordinarily narrow." *NAB Bank v. LaSalle Bank, N.A.*, 2013 IL App (1st) 121147, ¶ 16. While the justice clause seems broad, it "is not 'so open-ended as to make the interest conferred by a foreclosure-sale certificate illusory.'" *Id.* (quoting *Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018, 1023 (7th Cir. 2006)).

¶ 17    Once a motion to confirm a judicial sale has been filed, the time has passed for a borrower to merely assert a meritorious affirmative defense to the complaint. *McCluskey*, 2013 IL 115469 at ¶ 26. Rather, a borrower seeking reversal of the approval of a sale pursuant to Section 1508(b)(iv) of the Foreclosure Law "must not only have a meritorious defense to the underlying judgment," but must prove that justice was not done "because either the lender, through fraud or misrepresentation, prevented the borrower from raising his meritorious defenses to the complaint at an earlier time in the proceedings, or the borrower has equitable defenses that reveal he was otherwise prevented from protecting his property interests." *Id.* In codifying the law on mortgage

foreclosures, the legislature did not intend for the justice provision of Section 1508(b)(iv) to be used merely to protect an interested party from his own negligence; rather, the provision represents "the long-standing discretion of the courts of equity to refuse to confirm a judicial sale" where unfairness is shown to have prejudiced the interested party. *Id*. at ¶ 19; *see also Id.* at ¶ 25 ("[T]he justice provision under section 15–1508 (b)(iv) acts as a safety valve to allow the court to vacate the judicial sale and, in rare cases, the underlying judgment, based on traditional equitable principles."); *Bank of America, N.A. v. Adeyiga*, 2014 IL App (1st) 131252, ¶ 120; *MidFirst Bank v. Riley*, 2018 IL App (1st) 171986, ¶ 38; *NAB Bank*, 2013 IL App (1st) 121147 at ¶ 17. In determining whether vacatur is required, the court considers whether the injustice was great enough to outweigh the need to establish stability in the sale process. *McCluskey*, 2013 IL 115469 at ¶ 25.

¶ 18     This Court explained in the *NAB Bank* decision that while there is no bright-line definition of what constitutes a sufficient injustice under Section 1508(b)(iv), the limited handful of cases in which the court vacated a sale pursuant to the justice clause predominantly involved an unconscionable sale price, which is a separate basis for rejecting a sale, found under 735 ILCS 5/15-1508(b)(ii). *NAB Bank*, 2013 IL App (1st) 121147 at ¶ 18 (citing *JP Morgan Chase Bank v. Fankhauser*, 383 Ill.App.3d 254, 265-66 (2d Dist. 2008) (requiring evidentiary hearing regarding conscionability of sale price); *Commercial Credit Loans, Inc. v. Espinoza*, 293 Ill.App.3d 915, 927-28 (1st Dist. 1997) (holding that the bid at a sheriff's sale that was one-sixth of the value of the property was an unconscionable disparity); *Merchants Bank v. Roberts,* 292 Ill.App.3d 925, 931 (2d Dist. 1997) (vacating sale based not only on unconscionable price but also on credible argument that wrong parcel was sold)). The cases discussed in *NAB Bank* in which the court found the justice clause to apply, and not any of the other three bases for reversal, involved errors relating

to the actual sale process, which is not in question in the present appeal; furthermore, the reasoning in these decisions rested on traditional notions of estoppel rather than concepts of justice. *Id.* (citing *Fleet Mortgage Corp. v. Deale*, 287 Ill.App.3d 385, 390 (1st Dist. 1997) (vacating sale that should have been cancelled because the lender had accepted the borrowers' timely and full redemption payments, but was nonetheless held because of a clerical error); *Citicorp Savings of Illinois v. First Chicago Trust Co. of Illinois*, 269 Ill.App.3d 293, 206 (1st Dist. 1995) (finding that it would not have been in the interest of justice to approve a sale that took place by mistake, while the lender represented to the borrowers that it was postponed); *New Century Mortgage Corp. v. Pinto*, 2002 WL 31455969, *1-2 (N.D. Ill. 2002) (vacating sale due to significant error in title search affecting marketability of title)). Our supreme court in *McCluskey*, writing after the *NAB Bank* decision, further noted that in two of the above-referenced cases, *Deale* and *Espinoza¸* the court found that an injustice had been done because it was the lenders' conduct that prevented the borrowers from protecting their interests in the respective properties, and affected their right to redeem their property. *McCluskey*, 2013 IL 115469 at ¶ 22 (citing *Deale*, 287 Ill.App.3d at386-87 and *Espinoza*, 293 Ill.App.3d at 927).

¶ 19      Here, Defendant cannot claim that the conduct of the lender (neither Plaintiff nor the original plaintiff that filed the foreclosure case) prevented him and his wife from protecting their interest in the Property. Neither is Defendant claiming that he sought to redeem the Property in his objections to the judicial sale. Furthermore, while he takes issue with the circuit court's confirmation of a deficiency of $208,112.76, he does not allege that the sale price was unconscionable, or that there was any error made in conducting the sale itself, limiting his objection to the circuit court's consideration in ruling on the motion to confirm the sale. Defendant instead cites to the decision in *Deutsche Bank National Trust Co. v. Cortez* as a factually analogous

case in which this Court found that the circuit court should have held a hearing on whether the borrower had made payments to the lender towards his mortgage that were not accounted for, and would have resulted in a surplus at sale. 2020 IL App (1st) 192234, ¶ 25.

¶ 20    In *Cortez*, the defendant objected to the approval of the judicial sale of the mortgaged property pursuant to Section 1508(b)(iv), arguing that justice was not done where the sale occurred despite his entering into a loan modification agreement with the plaintiff and making timely payments that were accepted by the plaintiff until the plaintiff. *Id.* at ¶ 10. In response to the plaintiff's motion to approve the sale, the defendant submitted bank records showing five monthly payments made to a loan servicer, which he argued represented a three-month trial payment plan which he completed, plus two additional months of payments under the final mortgage modification agreement. *Id.* The defendant also included an unsigned copy of the trial period plan offered by the plaintiff. *Id.* The plaintiff admitted that the defendant made all the required payments under the trial payment plan, but countered that he never signed and returned the final modification agreement. *Id.* at ¶ 11. The plaintiff included a copy of the unsigned agreement. Neither party provided affidavits with their submissions to the court. *Id.* The circuit court entered an order approving the sale, and providing for a surplus. However, the court did not include credits for the five months of payments made by the defendant. *Id.* at ¶ 13.

¶ 21    On appeal, we noted that the parties agreed that the defendant had been offered and completed a trial payment plan, and had subsequently been offered a final loan modification agreement. What the circuit court had not determined was whether the defendant had ever signed and returned a copy of the final agreement and whether any actions of the plaintiff contributed to the failure of the final loan modification agreement from being executed; neither party submitted affidavits or other corroborating evidence to authenticate their positions on whether the agreement

was in effect. *Id.* at ¶ 24. If the modification agreement had been executed, the defendant's interest in the property would have been protected and confirmation of the sale under those conditions would "would arguably fall within the 'justice not otherwise done' clause of section 15-1508(b)(iv)." *Id.* We determined that the circuit court could have cured the lack of corroborating evidence by holding an evidentiary hearing regarding the status of the defendant's loan modification prior to confirming the sale. *Id.*

¶ 22    We also remanded the case back to the circuit court for an evidentiary hearing regarding the defendant's related argument that the surplus amount should have been greater, to account for payments he made under the trial modification and then began to make under the modification agreement terms until the plaintiff returned his last payment and proceeded to the sale.[4] *Id.* at ¶ 34. While the plaintiff argued that the defendant hadn't submitted admissible evidence showing that he had made any unaccounted-for payments, we noted that the plaintiff admitted that the defendant made three months' payment pursuant to the trial modification plan, and further admitted to having returned a payment that the defendant made after that trial period. We determined that "while neither party has presented competent evidence as to the exact amount of funds paid by defendant and plaintiff's allocation of those funds, there is sufficient evidence in the record to warrant a hearing regarding the proper amount of the surplus." *Id.*

¶ 23    Before addressing the applicability of *Cortez* to this matter, we note another similarity between the arguments in the present case and *Cortez* regarding the sufficiency of the record on appeal. The plaintiffs in both cases argue that the record on appeal is lacking, containing no transcript or bystander's report to indicate whether and how the circuit court allegedly abused its

---

[4] While we determined that the circuit court should have held an evidentiary hearing on the amount of the sale surplus, we declined to overturn the approval of the sale, as we were precluded from doing so because the title to the property in question had already vested by deed to a third-party buyer. *See id.* at ¶ 29.

discretion, and absent such evidence, the appellant cannot meet his burden of showing that the circuit court's ruling was improper. Therefore, this Court must assume that the circuit court had a sufficient basis for its ruling confirming the sale and denying Defendant's motion for reconsideration. *Id.* at ¶ 15. It is true that the record on appeal does not contain court transcripts or a bystander's report. As in *Cortez*, however, we decline to presume that the circuit court's decision had an adequate basis in fact and law, as the record is sufficient for our review. *See id.* Our reasoning conforms to that in *Cortez*, namely that we have before us the arguments and evidence submitted before the circuit court, and the parties rely on substantially similar arguments on appeal as they did before the circuit court.[5]

¶ 24    Furthermore, regarding the adequacy of the record, it is the appellant's burden to provide a record on appeal that contains a "report of proceedings [that] include[s] all the evidence pertinent to the issues on appeal." Ill. Sup. Ct. R. 323(a) (eff. July 1, 2017). Where the issue on appeal relates to the conduct of the hearing or proceedings, this issue is not subject to review absent a report or record of the proceedings. Instead, absent a record, "it will be presumed that the order entered by the trial court was in conformity with the law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). If Defendant has not provided us with a report of proceedings, bystander's report, or transcript of the January 24, 2020 hearing on Plaintiff's motion to approve the report of sale and distribution, the evidentiary hearing on Defendant's motion to vacate, or the March 29, 2021 hearing on Defendant's motion to reconsider, we have no legitimate reason to conclude that the trial court abused its discretion. Having been denied relief by the circuit court in

---

[5] *See id.* ("The parties' arguments on appeal are substantially similar to those presented to the circuit court when briefing the motion to confirm the sale of the property. Additionally, the circuit court had before it the same documents attached to those pleadings that have been presented for our consideration. There is no argument raised in this appeal that is dependent on the arguments of trial counsel or statements made by the circuit court during the hearing on the motion to confirm the sale.")

their original challenge to the sale, Defendant are not entitled to a second bite at the apple on a motion to reconsider when all they present is a document that was easily available to them at the original hearing.

¶ 25     We turn now to Defendant's argument that the holding in *Cortez* requires us to rule in his favor in the present matter. While it is evident why Defendant here draws comparisons to the *Cortez* case, there are notable factual distinctions between these cases. Here, Plaintiff at no point admitted to Defendant having made any payments towards the mortgage arrearage, and Defendant has made an even less sufficient showing of having made any payments than the defendant in *Cortez*. The parties do not agree that Defendant made any payments and Plaintiff received any payments. As for Defendant's proffered evidence that he made payments towards the mortgage arrearage, the record shows that when he objected to Plaintiff's motion to confirm the sale, the only documentation he provided to the circuit court was the Ocwen Loan Servicing statement from March 18, 2019 stating that the De La Cruzes had a "Total Post-Petition Unpaid Payment Amount" of $114,413.62. This amount is not the same amount that he claimed to have paid towards the debt. There is no explanation in the record as to what is meant by "Unpaid Payment Amount," and we agree with Plaintiff's argument that this does not appear to show how much Defendant paid, but rather, how much he did *not* pay.

¶ 26     The defendant in *Cortez* definitively showed the lower court that a trial modification plan existed, that he successfully completed the trial period, that the plaintiff accepted the full payment he made pursuant to the trial plan, and that a final loan modification agreement existed. The plaintiff further admitted that it received and returned at least one payment the defendant made after the trial period. The parties only disputed whether that final agreement had been executed and taken effect when the defendant began making payments under its terms. Additionally, the

defendant in *Cortez* was able to show that the circuit court's failure to account for his loan modification payments prejudiced him because the sale resulted in a surplus even without applying any of the payments he claimed to have made. In the present case, Defendant argues that the sale would have resulted in a surplus of approximately $74,000. The sale, as approved by the circuit court, resulted in a deficiency of $208,112.76. It is unclear how Defendant arrives at this surplus, but that is not because of competing evidence warranting a hearing—it is because Defendant failed to support his objections before the circuit court. Not only was there an undisputed deficiency from the sale in this matter, but Defendant also does not address Plaintiff's argument that he did not— and could not—show that he was prevented from protecting his interest in the Property given that his personal liability under the defaulted mortgage note was discharged under Chapter 7 bankruptcy.

¶ 27    For the first time on his motion for reconsideration, Defendant presented the circuit court with his only other evidence of having made payments towards the loan during bankruptcy proceedings—the Chapter 13 Standing Trustee's Final Report and Account ("Chapter 13 Report") entered on March 6, 2019. The Chapter 13 Report includes a line under the category of "Summary of Disbursements to Creditors; Secured Payments" listing that Defendant and his wife paid $102,172.13 towards the principal of "Mortgage Ongoing," and paid nothing towards "Mortgage Arrearage." This is at odds with his argument on appeal, where he repeatedly claims to have made over $100,000.00 in payments toward the mortgage arrearage through his bankruptcy case. Furthermore, as previously stated, he fails to explain why he did not present the Chapter 13 Report in his original objections to the sale. He is also silent as to why this document contradicts the Ocwen mortgage statement payment document submitted in connection with the original objection proceedings, which states on its face that there were Post-Petition Unpaid Payments in the amount

of $114,413.62. Instead, he notes that the report was subject to judicial notice because it was in the public record included in the records of the bankruptcy court.

¶ 28    Courts of review "may take judicial notice of matters that are readily verifiable from sources of indisputable accuracy." *People v. Mata*, 217 Ill. 2d 535, 539 (2005). But judicial notice may not be used to introduce new evidentiary material not considered by the trier of fact. In *People v. Cline*, 2022 IL 126383, ¶ 33, the court held that it is not "permissible for a reviewing court to take judicial notice of material that was not considered by the trier of fact in weighing the credibility of an expert witness's testimony." *See also Bayview Loan Servicing v. Starks*, 2022 IL App (2d) 210056, ¶ 12 (citing *Cline*, 2022 IL 126383, ¶ 32) ("Courts of review 'may take judicial notice of matters that are readily verifiable from sources of indisputable accuracy.' *** Judicial notice may not be used, however, to introduce new evidentiary material not considered by the trier of fact."); *People v. Kuehner*, 2022 IL App (4th) 200325, ¶¶ 128, 130 ("Although we acknowledge that the supreme court in Cline was dealing with weighing the credibility of an expert witness's testimony, we believe its analysis applies fully in other contexts. *** [W]e conclude it is impermissible for a reviewing court to take judicial notice of material that was not considered by the trial court.") Furthermore, even if the Chapter 13 Report was sufficient to cure the lack of evidence presented by Defendant, a court is not required to take judicial notice of something that a party does not bring to the court's attention, even if it is publicly available information. *See Kyles v. Maryville Academy*, 359 Ill. App. 3d 423, 437 (1st Dist. 2005) (Although the trial court must take judicial notice of statutes and ordinances, it would be overly burdensome to require courts to be aware of any law that is not brought to its attention); *see also People v. Varnado*, 66 Ill.App.3d 413, 419 (1st Dist. 1978) (A court is not required to take judicial notice of a fact without a proper request to do so.) Therefore, the circuit court did not err in originally failing to discover and

subsequently consider the Chapter 13 Report, and it constituted evidence presented for the first time on Defendant's motion for reconsideration.

¶ 29    "The purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence that was not available at the time of the original hearing, changes in existing law, or errors in the court's application of the law." *Evanston Ins. Co. v. Riseborough*, 2014 IL 114271, ¶ 36. A party seeking reconsideration based on new evidence must show that "the newly discovered evidence existed before the initial hearing but had not yet been discovered or was otherwise unobtainable." *Simmons v. Reichardt*, 406 Ill. App. 3d 317, 324 (4th Dist. 2010). Issues raised before the trial court for the first time on a motion to reconsider are forfeited. *Tafoya-Cruz v. Temperance Beer Company, LLC*, 2020 IL App (1st) 190606, ¶ 83. The March 6, 2019 Chapter 13 Report existed at the time that Defendant originally objected to the judicial sale, and he failed to bring it to the court's attention. His argument that it was a document in the public record and the court should have taken judicial notice of the records of other courts fails to cure his previous error. The Motion to Reconsider was based on new evidence and new arguments not made in the original hearing, was properly denied, and did not constitute an abuse of discretion.

¶ 30    The circuit court in *Cortez* found that neither side presented sufficient evidence (including failing to procure affidavits or sworn statements supporting their positions) to show exactly how much the defendant paid, but that the record contained sufficient evidence to warrant holding an evidentiary hearing on the surplus amount. *Cortez*, 2020 IL App (1st) 192234, ¶ 34. However, this does not mean that Defendant here was entitled to an evidentiary hearing on whether he had made post-petition payments towards the mortgage arrearage merely by raising this argument before the court in opposition to the sale. Rather, he bore the burden of sufficiently establishing why such a hearing was warranted in order to reach an equitable and just result. Defendant failed to do so here.

Even further, as required for the court to award relief pursuant to Section 1508(b)(iv) of the Foreclosure Law, he does not show how the lender prevented him from raising his meritorious defenses sooner, or how his equitable defenses reveal that he was otherwise prevented from protecting his property interests. *See McCluskey*, 2013 IL 115469 at ¶ 26.

¶ 31    Because we find that the circuit court did not abuse its discretion in approving the judicial sale, we need not discuss Defendant's additional argument that the circuit court should have determined whether and how Defendant's pending Chapter 13 bankruptcy case affected the accumulation of interest on the loan, and whether Defendant's alleged payments went towards the loan interest or principal.

¶ 32                                         CONCLUSION

¶ 33    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 34    Affirmed.